**KANSAS SAND AND CONCRETE, INC., Transferee and Kansas Sand and Concrete, Inc., Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

No. 71–1662.

United States Court of Appeals, Tenth Circuit.

July 28, 1972.

Rehearing Denied Aug. 25, 1972.

Murray F. Hardesty, Topeka, Kan., for appellants.

John A. Townsend, Tax Div., Dept. of Justice, Washington, D. C. (Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks and Ernest J. Brown, Tax Div., Dept. of Justice, Washington, D. C., on the brief), for appellee.

Before JONES*, McWILLIAMS and BARRETT, Circuit Judges.

BARRETT, Circuit Judge.

Kansas Sand and Concrete, Inc. (taxpayer) appeals from a ruling by the Tax Court that the basis in the assets it acquired from its subsidiary is measured by reference to its basis in the subsidiary's stock prior to distribution and came within Section 334(b) (2) of the Internal Revenue Code. 56 T.C. 522 (1971). The Government determined deficiencies in the taxpayer's income taxes of $10,711.27 and $12,162.28 for 1965 and 1966 respectively.

In September of 1964 the Tax Court found that the taxpayer, a Kansas corpo-

* Of the Fifth Circuit, sitting by designation.

ration doing business in Topeka, purchased all the 1,050 outstanding shares of Kansas Sand Company, Inc., (Sand), a Kansas corporation engaged in a related business in Topeka, from Fred and Kathryn Kuehne. An "Agreement and Plan of Merger" was thereafter entered into in November of 1964 between the taxpayer and Sand. The purpose of the merger was to ease record keeping and centralize management. On December 30, 1964 the officers in Sand and the taxpayer were the same persons. Sand merged into the taxpayer on December 31, 1964 in compliance with the Kansas statutes on merger. K.S.A. 17–3701 through 17–3709. The taxpayer's shares remained unchanged and each share of common stock of Sand owned by Concrete was cancelled. Sand's business activities were thereafter conducted by the taxpayer. All of the employees and customers of Sand became the employees and customers of the taxpayer.

The Commissioner of Internal Revenue determined the basis of depreciation was an allocation of the taxpayer's cost for the Sand stock among the assets received in the merger. The taxpayer's depreciation deduction allowed by the Commissioner amounted to $36,126.34 and $38,933.88, respectively, for 1965 and 1966. The Commissioner accordingly issued a deficiency notice inasmuch as the taxpayer had computed its depreciation in the amount of $52,589.77 and $64,525.36, respectively, for 1965 and 1966 under Section 362(b).

The issue is whether this transaction should be treated for federal income tax purposes as a reorganization under Section 368(a) (1) (A) as the taxpayer contends, or as a complete liquidation under Section 332(b) as the Government contends. Compliance with the taxpayer's position would require the basis to be determined by Section 362(b) which would authorize the taxpayer to carry over the adjusted tax basis assigned to the assets by Sand on the date of the merger. Under the Commissioner's theory the tax basis must be computed under Section 334(b) (2) which requires the taxpayer to allocate its basis in the Sand stock among the assets received from Sand.

The taxpayer strongly contends that the transaction complied with the statutory merger laws of Kansas and, accordingly, that it should be governed by the reorganization provisions of the Code. Section 368(a) (1) (A) defines a reorganization as a "statutory merger". Regulation 1.368–2(b) defines statutory merger as "a merger effected pursuant to the laws of the United States or a State . . . ." Since the taxpayer strictly complied with Kansas statutes on merger, it contends that the transaction qualified as a reorganization under the Code. The taxpayer alleges that the continuity of interest requirement under Regulation 1.368–1(b) was met. There was a continuity of the business enterprise of Sand on a day to day operating basis in modified corporate form. There was also a continuity of interest of the owners before and after the reorganization. The only effect of the taxpayer's actions was to cancel Sand's stock.

Under Section 332(b), a distribution in complete liquidation occurs when:

"(2) the distribution is by such other corporation in complete cancellation or redemption of all its stock, and the transfer of all the property occurs within the taxable year; * * *

* * * A distribution otherwise constituting a distribution in complete liquidation within the meaning of this subsection shall not be considered as not constituting such a distribution merely because it does not constitute a distribution or liquidation within the meaning of the corporate law under which the distribution is made; * * * *"

The Tax Court found: On December 31, 1964 Sand's separate corporate affairs were wound up; Sand's resources were vested in the taxpayer; Sand's liabilities were settled; Sand's separate existence and separate business activity

ceased; and the fact that the transaction qualified as a merger under the law of Kansas does not require that the distribution be exempted from the purview of Section 332. Nevertheless, we hold that the transaction also meets the definition of a reorganization under Section 368(a) (1) (A). The conflict can be resolved only by a determination as to which regulatory section controls.

Regulation 1.332–2(d) states in part that:

"If a liquidating corporation distributes all of its properties in complete liquidation and if pursuant to the plan for such complete liquidation a corporation owning the specified amount of stock in the liquidating corporation receives property constituting amounts distributed in complete liquidation within the meaning of the Code and also receives other property attributable to shares not owned by it, the transfer of the property to the recipient corporation shall not be treated, by reason of the receipt of such other property, as not being a distribution (or one of a series of distributions) in complete cancellation or redemption of all of the stock of the liquidating corporation within the meaning of Section 332, even though for purposes of those provisions relating to corporate reorganizations the amount received by the recipient corporation in excess of its ratable share is regarded as acquired upon the issuance of its stock or securities in a tax-free exchange as described in Section 361 and the cancellation or redemption of the stock not owned by the recipient corporation is treated as occurring as a result of a tax-free exchange described in Section 354."

In essence the regulation means that where there is a complete liquidation, the liquidation provisions in Section 332 take precedence over the reorganization provisions beginning with Section 361. The Tax Court in American Manufacturing Company Inc. v. Commissioner, 55 T.C. 204 (1970) explained the conflict in this manner:

"The legislative history lends credence to a view that Section 332 is intended to cover an area in which the reorganization nonrecognition provisions are inapplicable to a 'statutory merger or consolidation' under Section 368(a) (1) (A) that, in substance and effect, is no more than a liquidation of a subsidiary into its parent with all assets going to the parent. Indeed, the regulations under Section 332 take precedence over the reorganization nonrecognition sections, when stock and other property have been exchanged in a parent-subsidiary merger which would result in recognition of 'other property' under the reorganization provisions, but for the fact that Section 332 also applied." Sec. 1.332–2(d) and (e), Income Tax Regs. at 219–220.

Thus the transaction, even though qualifying under Section 368(a) (1) (A) as a reorganization must be treated as a complete liquidation for federal income tax purposes. We hold that Section 332 takes precedence over Section 368 in these particular circumstances. Since the taxpayer's acquisition of Sand's assets is a complete liquidation of Sand under Section 332(b), the tax basis is determined by Section 334(b) which states:

"(b) *Liquidation of subsidiary.*—

\* \* \* \* \* \*

(2) *Exception.*—If property is received by a corporation in a distribution in complete liquidation of another corporation (within the meaning of Section 332(b)), and if—

(A) the distribution is pursuant to a plan of liquidation adopted—

(i) on or after June 22, 1954, and

(ii) not more than 2 years after the date of the transaction described in subparagraph (B) (or, in the case of a series of transactions, the date of the last such transaction); and

(B) stock of the distributing corporation possessing at least 80 percent of the total combined voting

power of all classes of stock entitled to vote, and at least 80 percent of the total number of shares of all other classes of stock (except nonvoting stock which is limited and preferred as to dividends), was acquired by the distributee by purchase (as defined in paragraph (3)) during a 12-month period beginning with the earlier of—

\*    \*    \*    \*    \*    \*

then the basis of the property in the hands of the distributee shall be the adjusted basis of the stock with respect to which the distribution was made."

The taxpayer's transaction met the requirements of Section 334(b) (2). It received property in a distribution in complete liquidation under Section 332(b); it acquired over 80% of Sand's outstanding shares; and the time periods were met. Therefore the basis to the taxpayer is the adjusted basis of the stock with respect to which the distribution was made.

The other contentions raised by the taxpayer to refute the application of the liquidation provisions to the transaction have been reviewed. We hold that they are without legal merit.

In passing we are compelled to observe that in this case the taxpayer proceeded in all good faith. We are cognizant of the difficulties confronting officials charged with the obligation of drafting tax regulations interpretive of and construing the complexities of the Internal Revenue Code. The conflicts presented in this case might well have been avoided had the administrative drafters raised at least one or more "red flags" in the language employed in Section 368(a) (1) by specific reference back to the non-recognition language controlling under the provisions of Section 332. Any taxpayer, we believe, is entitled to this much guidance and consideration.

Affirmed in accordance with the Stipulations entered into by the parties filed on November 10, 1970 in the United States Tax Court.