**REALTY LOAN CORPORATION,**
Petitioner-Appellee,

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant.**

**REALTY LOAN CORPORATION,**
Petitioner-Appellant,

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

Nos. 71–1194, 71–1346.

United States Court of Appeals,
Ninth Circuit.

April 19, 1973.

---

Charles P. Duffy (argued) Duffy, Stout, Georgeson & Dahl, Portland, Or., for Realty Loan Corp.

Ernest J. Brown (argued), Johnnie M. Walters, Asst. Atty. Gen., Meyer Rothwacks, Tax Div., Dept. of Justice, K. Martin Worthy, IRS, Washington, D. C., for C.I.R.

Before HUFSTEDLER and GOODWIN, Circuit Judges, and THOMPSON,* District Judge.

ALFRED T. GOODWIN, Circuit Judge:

The Commissioner of Internal Revenue appeals from a Tax Court decision permitting Realty Loan Corporation, an accrual-basis taxpayer, to report the income from the sale of a business on the installment basis. 54 T.C. 1083 (1970).

Realty Loan originally sought to treat the proceeds of the sale as capital gain, and has filed a protective appeal from the Tax Court decision denying capital-gain treatment. Because we affirm the decision insofar as it permitted the taxpayer to report the proceeds of the sale on the installment basis, we do not reach the question presented in the protective appeal.

Realty Loan was a closely held corporation engaged in the mortgage-banking and mortgage-servicing business. Realty Loan processed mortgage loan applications. After completing a loan, Realty Loan ordinarily assigned the note and mortgage to one of several insurance companies with whom it regularly did business. After assignment, Realty Loan serviced the mortgages as agent for the insurance companies and received a service fee. Realty Loan had agreements formalizing this relationship with Bankers Life Company and with Mutual Trust Life Insurance Company.

In 1962 Realty Loan sold its business to Sherwood and Roberts, Inc., a Washington corporation engaged in the same type of business, but operating on a larger scale. The agreement of sale was to become effective only after the insurance companies dealing with Realty Loan consented to Sherwood and Roberts' taking over the files. In due course the companies approved the sale.

The recital sale price of $86,500 was subject to adjustment upward or downward to reflect an accounting. The final amount paid was adjusted down to $82,688.54. The original contract called for the following annual payments: 1962, $4,197.11; 1963, $15,840.59; 1964, $16,651.03; 1965, $17,502.93; 1966, $18,437.22; and 1967, $13,871.12.

The taxpayer reported the sale as an installment sale of a capital asset. The Commissioner filed a notice of deficiency. The Commissioner took the position that the gain was ordinary income, and, further, that it was not subject to installment reporting. Under the Commissioner's theory, all of the income accrued in 1962.

The Tax Court held that the consideration paid to Realty Loan was primarily for the right to receive servicing fees and that only $10,000 was allocable to good will. This $10,000 had a cost basis of $2,941, and was treated as a capital gain. The Tax Court held that the remaining $72,688.54 was ordinary income, contrary to the contentions of the taxpayer, but allowed the income to be reported on the installment basis.

The Commissioner argues that the installment method of reporting under Int.Rev.Code of 1954, § 453, is not avail-

* The Honorable Bruce R. Thompson, United States District Judge for the District of Nevada, sitting by designation.

able because the contract was not for the sale of "property." Section 453 installment reporting is available only if the contracts are "personal property." § 453(b)(1)(B). The Commissioner argues that the contract rights sold would not be "property" for capital-gains purposes (§ 1221), and, therefore, cannot be "property" for purposes of § 453.

The Commissioner's attempt to restrict the definition of property is not convincing. Because the Congressional purpose in enacting a special tax rate for capital gains was quite narrow, but the Code definition of "capital asset" was broad, the courts have refined the definitions under § 1221. Surrey, Definitional Problems in Capital Gains Taxation, 69 Harv.L.Rev. 985, 987–89 (1956). The courts have limited, for purposes of the capital-gains provisions, the definitions of "property" and "sale or exchange" in keeping with the perceived Congressional purpose. *See, e. g.,* Commissioner v. P. G. Lake, Inc., 356 U.S. 260, 264–267, 78 S.Ct. 691, 2 L.Ed.2d 743 (1958). The Supreme Court has explicitly held that the definition of "property" for purposes of § 1221 is sui generis. Commissioner v. Gillette Motor Transport, Inc., 364 U.S. 130, 80 S.Ct. 1497, 4 L.Ed.2d 1617 (1960) ("property" for purposes of fifth amendment is not "property" for § 1221); Commissioner v. P. G. Lake, Inc., *supra.* But we need not adopt an artificial construction of "property" for § 453 unless the Commissioner shows that there exist here, as in the capital-gains area, policy reasons for doing so.

The Commissioner suggests that his definition of "property" is necessary to prevent the installment sale of rights to receive income which had been previously earned. But a strained definition of property is not necessary to prevent that evil. If a right has matured or the income is receivable under a claim of right, the income is presently taxable regardless of any later disposition. Commissioner v. Horst, 311 U.S. 112, 61 S. Ct. 144, 85 L.Ed. 75 (1940). Incorrect treatment of accrued rights to income is also subject to attack under the requirement of § 446(b) that the method of accounting used clearly reflect income. Commissioner v. Kuckenberg, 309 F.2d 202 (9th Cir. 1962), cert. denied, 373 U. S. 909, 83 S.Ct. 1296, 10 L.Ed.2d 411 (1963); Family Record Plan, Inc. v. Commissioner, 309 F.2d 208 (9th Cir. 1962), cert. denied, 373 U.S. 910, 83 S. Ct. 1297, 10 L.Ed.2d 411 (1963).

The Commissioner's brief suggests that his actual concern is with the installment sale of unaccrued contract rights. However, the Commissioner has not shown how the installment treatment of the sale of such rights could be an abuse of the installment-sale provisions of the Code. Allowing installment-sale treatment of unaccrued contract rights together with other kinds of property is consistent with the purpose of § 453's predecessor as stated by the Supreme Court: the avoidance of the hardship of immediate taxation of unreceived and unreceivable sums, and the avoidance of the difficulty of valuation of installment obligations. Commissioner v. South Texas Lumber Co., 333 U.S. 496, 503, 68 S.Ct. 695, 92 L.Ed. 831 (1948). The reference to the "basis" of the property in § 453 does not indicate otherwise. Many items, such as copyrights or patents, may have no "basis" but are nonetheless "personal property" eligible for installment-sale treatment. Rev.Ruling 234, 1953–2 Cum.Bull. 29.

Nor do the demands of consistency impel us to incorporate the capital-gains definition of "property" into the installment-sale provisions. Not only is there no need to harmonize the installment-sale and capital-gains provisions, but the Commissioner's proposed definition would not establish harmony. As he conceded in his discussion of Ann Edwards Trust, 20 T.C. 615 (1953), aff'd, 217 F.2d 952 (5th Cir.), cert. denied, 349 U.S. 905, 75 S.Ct. 581, 99 L.Ed. 1241 (1955), the differing exceptions to §§ 453 and 1221 preclude any such harmony.

The Commissioner cites several cases in which installment-sale treatment was refused, but all of them involved purposed "sales" of contract rights between the original parties to the contract. None held that a contract right could not be "property." Billy Rose's Diamond Horseshoe, Inc. v. United States, 448 F.2d 549 (2d Cir. 1971); Estate of Scharf v. Commissioner, 316 F.2d 625 (7th Cir. 1963); Town and Country Food Co., 51 T.C. 1049 (1969); Harry L. Barnsley, 31 T.C. 1260 (1959); Charles E. Sorensen, 22 T.C. 321 (1954).

We give "property" its natural and normal meaning, and hold that the mortgage-servicing contracts sold here were "property" eligible for installment-sale treatment under Int.Rev.Code of 1954, § 453. Accordingly, we do not reach the other contentions of the parties.

Affirmed.