MOVIELAB, INC., as Successor to
Movielab Color Corporation

v.

The UNITED STATES.

No. 97–72.

United States Court of Claims.

March 20, 1974.

James B. Lewis, New York City, attorney of record, for plaintiff. Peter J. Rothenberg and Robert Thornton Smith, New York City, of counsel.

Kenneth R. Boiarsky, Washington, D. C., with whom was Asst. Atty. Gen. Scott P. Crampton, for defendant. Gilbert E. Andrews, Jr., and Joseph Kovner, Washington, D.C., of counsel.

Before NICHOLS, KASHIWA, and KUNZIG, Judges.

OPINION

KASHIWA, Judge.*

This is a suit for the refund of federal income taxes paid for the years 1963

---

* This opinion contains all the essential findings of fact which the parties have stipulated pursuant to Rule 134(b)(2) of the Rules of this court.

and 1966 in the amounts of $20,615 and $954,849, respectively, plus interest as provided by law. For reasons hereinafter stated, we hold for the plaintiff and against the defendant.

The essential stipulated facts may be summarized as follows. Movielab Color Corporation (hereinafter "Color") was a wholly owned subsidiary of Movielab, Inc. (hereinafter "Movielab"). Both Color and Movielab at all relevant times operated on a taxable year which is a year of 52 or 53 weeks ending on the Saturday nearest to December 31. For 1967 and prior years, Movielab and its subsidiaries filed separate income tax returns. For 1968 and subsequent years, Movielab and its subsidiaries have filed consolidated income tax returns.

By statutory merger consummated on July 2, 1967, Color was merged into Movielab. All the assets and liabilities of Color were acquired by Movielab, and all the shares of Color's stock held by Movielab were canceled. The business purpose of the merger was to simplify bookkeeping and administration. There was continuity of interest on the part of the Movielab shareholders.

Prior to the date of the merger, Movielab conducted a black-and-white film processing business and Color conducted a color film processing business on the same premises. Following the date of the merger, Movielab conducted both the black-and-white and the color film processing businesses. No change in the method of operating either business was made as a result of the merger.

During the taxable year 1969, Movielab incurred a net operating loss (hereinafter "NOL") of $3,817,402.12, of which $3,343,124.18 was incurred with respect to the conduct of the business acquired from Color. For the taxable year 1966, Color (then a subsidiary of Movielab) had, without reference to the NOL carryback, taxable income of $2,056,289.02.

Movielab, as successor to Color, claims refund of the 1966 income tax of $954,849[1] paid by Color, by carryback to Color's 1966 taxable year of the above-described $3,343,124.18 NOL. The computational question thereby raised is whether the 1969 post-merger NOL incurred by Movielab with respect to the business acquired by it from Color may be carried back to the 1966 pre-merger taxable year of Color. In order to resolve this question, this court is faced with two legal issues: (1) Was the merger of Color into Movielab a reorganization described in section 368(a)(1)(F) of the Internal Revenue Code of 1954[2] so that a post-merger NOL incurred by Movielab may be carried back under section 381(b) to pre-merger taxable years of Color, and (2) Even if the merger is one described in section 368(a)(1)(F), does the fact that the merger also constituted a liquidation of a subsidiary by its parent within the provisions of section 332 constitute a bar to the above-described carryback.

With respect to the question of whether the statutory merger of Color and Movielab also constituted a reorganization described in section 368(a)(1)(F)[3]

---

1. The remaining portion of the refund claim arises in the following way: Carryback of Movielab's 1969 NOL to Color's 1966 taxable year results in an unused investment credit of $27,169.69 for 1966. For the taxable year 1963, Color had taxable income of $313,605.43 and an investment credit (computed without reference to the unused investment credit carryback) of $18,749.86. Movielab, as successor to Color, claims refund of $20,615 of 1963 tax based on carryback to that year of the 1966 unused investment credit. The Government concedes that if the plaintiff is entitled to the refund of Color's 1966 taxes, then the 1963 portion follows as a matter of course.

2. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise stated.

3. The relevant portions of section 368 are:
"Sec. 368. *Definitions Relating To Corporate Reorganizations.*
"(a) Reorganization.
"(1) In general. For purposes of parts I and II and this part, the term 'reorganization' means—
"(A) a statutory merger or consolidation;
    *       *       *       *       *
"(D) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transfer-

(hereinafter sometimes described as an "F" reorganization), it is necessary briefly to describe the statutory context in which the case arises. The loss carryover provisions contained in section 172 basically represent an attempt to stabilize business income by, in effect, setting up a form of averaging system for a business cycle of nine years. By use of carryovers, the losses of bad years may be used to offset income in gain years. In that way the income tax system does not operate, in loss years, as a tax on capital for the relevant period. Section 172(b)(1)(A) and (2)[4] allows a taxpayer to utilize an NOL for any taxable year as an NOL carryback to the third preceding taxable year. Thus, section 172 in effect takes note of the fact that a business is an ongoing enterprise with fluctuating performance. Particularly poor performance should be offset against successful performance of the same enterprise.

In the context of corporate reorganizations, the problem of "trafficking" in loss carryovers[5] led to revision of the Code provisions governing allowance of various carryovers. Immediately relevant to our consideration of the allowability of offsetting post-merger losses against pre-merger gains are sections 381(a) and (b).[6] The Government

---

or, or one or more of its shareholders (including persons who were shareholders immediately before the transfer), or any combination thereof, is in control of the corporation to which the assets are transferred; but only if, in pursuance of the plan, stock or securities of the corporation to which the assets are transferred are distributed in a transaction which qualifies under section 354, 355, or 356;

\*　　\*　　\*　　\*　　\*

"(F) a mere change in identity, form, or place of organization, however effected."

\*　　\*　　\*　　\*　　\*

4. "Sec. 172. *Net Operating Loss Deduction.*

\*　　\*　　\*　　\*　　\*

"(b) Net operating loss carrybacks and carryovers.

"(1) Years to which loss may be carried.

"(A) (i) Except as provided in clause (ii) and in subparagraphs (D), (E), (F), and (G), a net operating loss for any taxable year ending after December 31, 1957, shall be a net operating loss carryback to each of the 3 taxable years preceding the taxable year of such loss.

\*　　\*　　\*　　\*　　\*

"(2) *Amount of carrybacks and carryovers.*—Except as provided in subsections (i) and (j), the entire amount of the net operating loss for any taxable year (hereinafter in this section referred to as the "loss year") shall be carried to the earliest of the taxable years to which (by reason of paragraph (1)) such loss may be carried. The portion of such loss which shall be carried to each of the other taxable years shall be the excess, if any, of the amount of such loss over the sum of the taxable income for each of the prior taxable years to which such loss may be carried. For purposes of the preceding sentence, the taxable income for any such prior taxable years shall be computed—

"(A) with the modifications specified in subsection (d) other than paragraphs (1), (4), and (6) thereof; and

"(B) by determining the amount of the net operating loss deduction—

"(i) without regard to the net operating loss for the loss year or for any taxable year thereafter, and

"(ii) without regard to that portion, if any, of a net operating loss for a taxable year attributable to a foreign expropriation loss, if such portion may not, under paragraph (1)(D), be carried back to such prior taxable year,

"and the taxable income so computed shall not be considered to be less than zero.

\*　\*　\*"

\*　　　\*　　　\*　　　\*　　　\*

5. See, generally, Libson Shops, Inc. v. Koehler, 353 U.S. 382, 77 S.Ct. 990, 1 L.Ed.2d 924 (1957).

6. Sec. 381. *Carryovers In Certain Corporate Acquisitions.*

"(a) General rule. In the case of the acquisition of assets of a corporation by another corporation—

"(1) in a distribution to such other corporation to which section 332 (relating to liquidation of subsidiaries) applies, except in a case in which the basis of the assets distributed is determined under section 334(b)(2); or

"(2) in a transfer to which section 361 (relating to nonrecognition of gain or loss to corporations) applies, but only if the transfer is in connection with a reorganization described in subparagraph (A), (C), (D) (but only if the requirements of subparagraphs (A) and (B) of section 354(b)(1) are met), or (F) of section 368(a)(1),

argues that the general rule of section 381(b)(3)—that a corporate acquiror of assets of another corporation may not carry back an NOL to a taxable year of the other corporation—is fully applicable to the instant case. The plaintiff, on the other hand, while conceding that general rule to the Government, argues that the 1967 reorganization fully qualified as an "F" reorganization. Being such, the general prohibition with respect to carrybacks has no force since section 381(b) specifically states that the prohibition is to apply

> Except in the case of an acquisition in connection with a reorganization described in subparagraph (F) of section 368(a)(1)—

█ The basic contention of the Government is that the merger of two operating companies cannot be an "F" reorganization. The Government interprets the language of section 368(a)(1)(F)— "a mere change in identity, form, or place of organization, however effected" —to be so restrictive as to exclude the amalgamation of two or more separate operating corporations. The Government points to supposed accounting and tax difficulties if the corporations involved have different taxable years or if many predecessor corporations are involved and an apportionment of the NOL must be made. The stipulated facts of this case, of course, raise no such problem. In any event, accounting difficulties, if such were to arise when corporations with different tax years are involved, do not, in and of themselves, determine fundamental tax consequences.

The Government has been consistently unsuccessful in urging its position that the definition of an "F" reorganization cannot accommodate the amalgamation of two or more separate operating corporations. Ironically, the courts first began to probe the definitional contours of the "F" reorganization concept in response to the Government's use of the provision in the liquidation-reincorporation area. In Davant v. Commissioner, 366 F.2d 874, 884 (5th Cir. 1967), cert. denied 386 U.S. 1022, 87 S.Ct. 1370, 18 L.Ed.2d 460 (1966), the court said:

> The term "mere change in identity [or] form" obviously refers to a situation which represents a mere change in *form* [Emphasis in original] as opposed to a change in substance. Whatever the outer limits of Section 368(a)(1)(F), it can clearly be applied where the corporate enterprise continues uninterrupted, except for a distribution of some liquid assets or cash. Under such circumstances, there is a change of corporate vehicles but not a change in substance. * * * At least where there is a complete identity of shareholders and their proprietary interests, as here, we hold that the type of transaction involved is a type (F) reorganization.

Following *Davant*, the Fifth and Ninth Circuits, in adopting the position of the plaintiffs involved therein, have again and again rejected the Government's argument that the "F" reorganization can

---

the acquiring corporation shall succeed to and take into account, as of the close of the day of distribution or transfer, the items described in subsection (c) of the distributor or transferor corporation, subject to the conditions and limitations specified in subsections (b) and (c).

"(b) Operating rules. Except in the case of an acquisition in connection with a reorganization described in subparagraph (F) of section 368(a)(1)—

"(1) The taxable year of the distributor or transferor corporation shall end on the date of distribution or transfer.

"(2) For purposes of this section, the date of distribution or transfer shall be the day on which the distribution or transfer is completed; except that, under regulations prescribed by the Secretary or his delegate, the date when substantially all of the property has been distributed or transferred may be used if the distributor or transferor corporation ceases all operations, other than liquidating activities, after such date.

"(3) The corporation acquiring property in a distribution or transfer described in subsection (a) shall not be entitled to carry back a net operating loss or a net capital loss for a taxable year ending after the date of distribution or transfer to a taxable year of the distributor or transferor corporation."

apply only to the reorganization of a *single* [7] corporation. In Estate of Stauffer v. Commissioner, 403 F.2d 611 (9th Cir. 1968), three separate but commonly owned corporations were consolidated into a newly formed corporation. After the reorganization, the new corporation suffered losses and attempted to carry them back to be applied against pre-reorganization income of one of the three original corporations. The court held that

> * * * *The principle we derive from Davant is that a shift in operating assets from the transferor corporation to its alter ego wherein the identity of the proprietary interest remains intact and the business enterprise of the transferor corporation continues unimpaired results in an "F" reorganization. There is a change of corporate vehicles but not a change in the substance of the transferor corporation.* * * * In the instant case, the only change that took place was that Stauffer New Mexico reported the combined income of the three pre-merger corporations in one tax return; the individual books of the constituent enterprises were kept as they had been before the merger; the enterprises continued to operate in the same manner and at the same locations as before the merger; the change was one of corporate vehicles only. The Regulations, § 1.381(b)–1(a)(2), state that in an "F" reorganization the acquiring corporation is to be treated "just as the transferor corporation would have been treated if there had been no reorganization." *Thus, the identity of pre- and post-merger entities is so complete that for tax purposes the latter is the former. That Stauffer New Mexico stood in the shoes of the three constitutent corporations cannot be here denied; it was the alter ego of each of the three pre-merger entities.* [Emphasis supplied.] [403 F.2d at 619–620.]

Associated Machine v. Commissioner, 403 F.2d 622 (9th Cir. 1968), also involved the section 381(b) loss carryback provisions. In that case, one operating corporation was merged into another commonly owned operating corporation. The Government balked at the attempt to carry back a post-merger NOL to a pre-merger year of the corporation which had lost its identity in the merger. The Government conceded that the "F" definition was broad enough to entertain the transfer of a single corporate enterprise to a "shell" corporation fabricated for the reorganization but argued that the definition simply could not accommodate the merger of one active corporation into another. In rejecting the Government's argument, the court stated:

> * * * Briefly, we hold that an "F" reorganization can involve more than one active corporation and that, therefore, under certain narrowly defined circumstances, a statutory merger, which is a § 368(a)(1)(A) reorganization, can also be an "F" reorganization. * * * [W]e hold this to be a reorganization effected through merger resulting only in a change of identity.

Our analysis logically begins with a consideration of whether an "F" reorganization can encompass more than one "active" corporation. While the Commissioner concedes that two corporations can be involved when one, the receiving corporation, is a "shell" fabricated for the reorganization, he contends that the intended simplicity of function of the "F" type reorganization prevents its being extended to the merger of two corporations independent in the sense of being separately incorporated for valid business reasons. It is the Commissioner's position that "F" reorganizations are limited to "mere formalistic changes in the charter or place of organization

---

7. This would include, under the Government's view, a transfer by a single active corporate enterprise to a "shell" corporation fabricated for the reorganization.

of a single corporate enterprise." In our judgment, the Commissioner's conception of the "F" reorganization is overly narrow. No logical distinction exists between a "shell receiver" and an "active receiver" when two factors co-exist: *one, when the proprietary interest in the transferor and transferee is identical; and two, when the business is not interrupted.*

This conclusion is consistent with tax court decisions in the area of reorganization-liquidation, apparently the only decisions dealing with the characteristics of the "F" reorganization. These cases identify the salient trait of an "F" reorganization as being an identity of proprietary interest in the transferee and transferor corporations. Berghash v. Commissioner, 43 T.C. 743, 752–754 (1965), aff'd 361 F.2d 257 (2d Cir. 1966); Gallagher v. Commissioner, 39 T.C. 144, 162 (1962), appeals dismissed Nos. 18844, 18845 (9th Cir. Sept. 19, 1963); Estate of James F. Suter v. Commissioner, 29 T.C. 244, 258 (1957). See Lane, "The Reincorporation Game: Have the Ground Rules Really Changed?" 77 Harv.L.Rev. 1218, 1247 (1964). In focusing on the indicia which we judge indicate whether or not a "mere change in identity" has occurred, we seek to avoid the mechanical approach advocated by the Commissioner which would frustrate what we believe is the function of § 368(a)(1)(F): a tax free reorganization involving corporate form but not substance. [Emphasis supplied.] [403 F.2d at 624.]

Home Construction Corp. of America v. United States, 439 F.2d 1165 (5th Cir. 1971), involved the merger of 123 separate corporations involved in the home construction business into a single newly formed corporation. Again, post-merger losses were sought to be carried back against previous years of the predecessor corporations. In ruling for the plaintiff, the Fifth Circuit followed the rationale of its earlier decision in *Davant:*

> In summary, we hold that *Davant* establishes criteria which adequately define when a reorganization qualifies as a mere change in form, identity, or place of incorporation. These include identity of shareholders and their proprietary interests, unimpaired continuity of the essential business enterprise and a new form which is the alter ego of the old. While the instant reorganization was more complex, it still meets all the criteria established by *Davant*. It therefore was an F reorganization. [439 F.2d at 1170.]

Having reviewed the cases and the arguments of both parties, we see no reason to depart from the rationale adopted by the Fifth and Ninth Circuits. It is our view that the Government has totally misconstrued the intent of Congress when the latter body defined an "F" reorganization to be "a mere change in identity, form, or place of organization * * *." There is nothing in these words to suggest the imposition of a one-active-corporation requirement as a hard and fast rule. The purpose of Congress in enacting the "F" reorganization provision was not to impose such a mechanical test nor was it to limit "F" reorganizations to fairly uncomplicated situations. The purpose was to limit "F" reorganizations to those of mere changes of form, as opposed to those involving changes of substance. Needless to say, the definition articulated by the Fifth and Ninth Circuits does not expand the "F" reorganization concept in such a way as to overwhelm the other reorganization provisions.

It is true that, as a statutory merger, the instant transaction was an "A," as well as an "F," reorganization. However, subparagraph (F) of section 368(a)(1) frequently overlaps with subparagraph (A), (C), or (D), which define the term "reorganization" to include, respectively, a statutory merger or consolidation, certain acquisitions by one corporation of properties of another

corporation in exchange for voting stock of the acquiring corporation, and certain transfers by one corporation of assets to another corporation controlled by the transferor corporation or its shareholders. For example, transfer of the operating assets of one corporation to another corporation owned by the same shareholders, although a "D" reorganization (Davant v. Commissioner, *supra*; Commissioner v. Morgan, 288 F.2d 676 (3d Cir. 1961), cert. denied 368 U.S. 836, 82 S.Ct. 32, 7 L.Ed.2d 37 (1961)), is nonetheless an "F" reorganization (Davant v. Commissioner, *supra*).

In Rev.Rul. 57-276, 1957-1 Cum.Bull. 126, the Commissioner ruled on the tax consequences of a statutory merger by which a corporation reincorporated under the laws of a state other than that of its original incorporation. Noting that the merger qualified as a reorganization under subparagraphs (A) and (F) of section 368(a)(1), the Commissioner held as follows:

> * * * Often a reorganization under section 368(a)(1)(F) of the Code will meet the requirements of subparagraphs (A), (C), or (D) of section 368(a)(1). It is believed that it was not the intention of Congress in enacting section 368(a)(1) of the Code to hold that just because a reorganization meets some other provision of section 368(a)(1) the provisions of subparagraph (F) of that section are not complied with even though the transaction also qualifies under subparagraph (F). *Taking a contrary view under the 1954 Code would, for all practical purposes, defeat the provisions of section 381(b) of the Code, since many section 368(a)(1)(F) reorganizations meet some other pro-*

*visions of section 368(a)(1)* [Emphasis supplied.] [at p. 127.]

So long as the reorganization is characterized by an identity of shareholders and their proprietary interests,[8] as well as unimpaired continuity in the essential business enterprise, the new form will be the alter ego of the old. The change which results will, by definition, be one of mere form.

The fact-pattern of the instant case presents an even more clear cut example of a formalistic change made merely to simplify bookkeeping and administration. Except for the fact that the business of Color ceased to be conducted in the separate context of a subsidiary, and instead became one aspect of Movielab, no changes occurred on the day following the merger. The same business was being conducted—without interruption —at the same location, by the same management and for the same proprietary interests.[9]

Cases which have denied "F" reorganization status do so on the basis that there has been a substantial shifting of proprietary interests or, secondly, that the same business is no longer being conducted in the new form. Obviously, when there is a substantial shift in ownership, it cannot be argued that the change has been merely of form. See Helvering v. Southwest Consolidated Corp., 315 U.S. 194, 202–203, 62 S.Ct. 546, 86 L.Ed. 789 (1942). Further, it is clear that "F" status cannot be had unless there is a continuation of the business enterprise. See Pridemark, Inc. v. Commissioner, 345 F.2d 35, 42 (4th Cir. 1965). As has been demonstrated, *supra*, there can be no doubt that the reorganization at issue met the tests of continuation of proprietary interests and

---

8. A *de minimis* change in stockholdings does not disqualify an intercorporate transfer of assets as an "F" reorganization. Rev.Rul. 66-284, 1966-2 Cum.Bull. 115.

9. The continuity of interest test required for all reorganizations and the identity of proprietary interest test required for "F" sta-

tus are met. The acquiring corporation was owned by "persons who, directly or indirectly, were the owners of the enterprise prior to the reorganization." Treas.Reg. § 1.368–1(b). Thus, the stockholders of Movielab had the requisite continuity of interest, even though they owned Color prior to the reorganization indirectly through Movielab.

business enterprise. These tests are sufficient to insure that the changes wrought by the reorganization are merely those of form, however complicated or involved.

The Government cites to us our decision in Columbia Gas of Maryland, Inc. v. United States, 177 Ct.Cl. 97, 366 F.2d 991 (1966), for the proposition that only where the reorganization involves a single corporation is the change "a mere change in identity [or] form." It is our view that *Columbia Gas* cannot be so read. That case involved the *division* of an operating corporation into two separate operating corporations. The case arose in the context of the documentary stamp tax provisions [10] but the issue was akin to that under income tax: was the division "a mere change of identity, form, or place of organization." Basically, the company involved caused its subsidiary to drop one of its businesses into a sub-subsidiary and then the stock of the sub-subsidiary was distributed to the parent in retirement of a portion of the formerly outstanding stock in the first subsidiary. This divisive transaction is governed by section 355, which was substantially rewritten as part of the 1954 Code revision. The crucial point to remember is that the only variety of (section 368(a)(1)) reorganization which can qualify for corporate division under section 355 is a "D" reorganization. Thus, section 368(a)(1)(D) becomes the sole arbiter of section 355 transactions such as that involved in *Columbia Gas*. This court's limited holding was based on the fact that we had before us a corporate division, for which Congress, through the highly intricate provisions of section 355, had provided special standards. To consider the transaction an "F" reorganization would allow the transaction to escape untested from those standards. For a

similar result in the income tax field, see Gordon v. Commissioner, 424 F.2d 378 (2d Cir. 1970), holding that Congressional intention would be thwarted by treating the division as an "F" reorganization since

> \* \* \* a divisive reorganization should not qualify as a mere change in form for purposes of Section 354 unless it meets the standards of either Section 354(b) or Section 355. [424 F.2d at 385.]

In light of the above, it seems clear that the *Columbia Gas-Gordon* line of cases is totally beside the point in the context of corporate amalgamations. The tax-avoidance practices so apparent in the context of divisive reorganizations, which led to the enactment of section 355, are not present in a case such as that before us. There is no reason to withhold the benefits flowing from the finding of an "F" reorganization merely because the transaction also qualified as an "A."

■ After determining that the reorganization satisfied the definitional requirements of an "F" reorganization, it would appear that the exceptional treatment established for "F" reorganizations by 381(b) would follow. The Government, however, argues that even if the amalgamation of two operating corporations meets the requirements of an "F" reorganization, the loss carryback is nonetheless prohibited by section 381(b)(3) since this particular amalgamation is also within the provisions of section 332,[11] which latter provision takes precedence over the reorganization provisions.

Basically, section 332 provides nonrecognition treatment on the receipt by a corporation of property distributed in complete liquidation of another corporation. The amalgamation of Color into

---

10. Section 4382(b)(1)(D).

11. "Sec. 332. *Complete Liquidations Of Subsidiaries.*

"(a) General rule. No gain or loss shall be recognized on the receipt by a corporation of property distributed in complete liquidation of another corporation."

its parent, Movielab, technically falls within the scope of section 332. From the standpoint of tax realism, the question facing us is whether different tax treatment should attach to the amalgamation of brother-sister corporations as in, e. g., Estate of Stauffer, Associated Machine, and Home Construction, *supra*, as opposed to the amalgamation of parent and subsidiary corporations.

This very issue was recently decided in favor of the taxpayer in the case of Performance Systems, Inc. v. United States, 32 AFTR 2d ¶ 73–5246 (M.D. Tenn. 8/30/73).[12] The court held that the merger of subsidiary into parent qualified as an "F" reorganization; and, thus, post-merger losses could be carried back against pre-merger income of the same enterprise. The court also discussed the effect of qualification under section 332:

> * * * The legislative draftsmen chose to except "F" reorganizations from the prohibition of carrybacks provided in Section 381(b). They did not choose to except liquidations under Section 332. They obviously felt that carryback of losses should be allowed in situations qualifying as "F" reorganizations. If they had intended that not all transactions which meet the requirements of an "F" reorganization be entitled to this relief, they would have so specified. * * * [32 AFTR 2d ¶ 73–5246, at p. 73–5780.]

There is obviously good reason not to allow carryback treatment to all section 332 liquidations. Not every 332 liquidation could qualify under the stricter continuity of proprietary interest and business enterprise tests which have evolved for "F" reorganization status. But if the reorganization does, as we so hold, qualify as an "F" reorganization, we can see no purpose, in either the technical or policy sense, in denying the "F" carryback benefits merely because of additional qualification under section 332.

As the court pointed out in *Performance Systems:*

> * * * If instead of liquidating the subsidiary, a parent merged into the subsidiary in a merger qualifying as an "F" reorganization, there would be no doubt that the carryback provision of Section 381(b) would be applicable. What difference should there be if a parent merges into subsidiary or subsidiary is merged into parent? The resulting business enterprise, proprietary interests, and identity of shareholders is the same. Therefore, there is merely a change in form, but not substance, and the tax consequence should be the same regardless of the direction of the transaction. [32 AFTR 2d ¶ 73–5246, at p. 73–5780.]

It has long been recognized that one transaction may be a merger as well as a liquidation. See Rogan v. Starr Piano Co., 139 F.2d 671 (9th Cir. 1943), cert. denied 322 U.S. 728, 64 S.Ct. 945, 88 L. Ed. 1563 (1943). The Government, however, looks to the structure of section 381(a) and argues that the plaintiff's only entrance into that section is through paragraph (1) of section 381(a):

> * * * in a distribution * * * to which section 332 (relating to liquidations of subsidiaries) applies, * * *.

The plaintiff, argues the Government, cannot gain entrance through paragraph (2) of section 381(a) because the transfer is not one

> * * * to which section 361 (relating to nonrecognition of gain or loss to corporations) applies, * * *.

We could agree with the Government on this point for plainly section 361 does not apply to the facts of the instant case; there has been no exchange of the assets of the subsidiary for stock of the parent. The crucial question, however,

---

12. The case has been appealed by the Government to the Sixth Circuit.

involves the effect of this argument when we come down to the operating rules of section 381(b). It is our view that section 381(b) is broader than section 381(a)(2). There is no reference in section 381(b) to section 361 and certainly no requirement that the reorganization qualify for nonrecognition treatment under section 361. Whereas section 381(a)(2) only covers reorganizations—"F" as well as others—qualifying for nonrecognition under section 361, section 381(b) excepts all "F" reorganizations from the carryback prohibition rule so long as the "F" is *definitionally* pure. Not qualifying under section 361 does not make the transaction any less an "F" reorganization. Had Congress so chosen, it could have kept the operating rules of section 381(b) as narrow as the entrance rules of section 381(a). The fact of the matter is that Congress saw no reason to require anything more than satisfaction of the definitional requirements of "F" status. Thus, we find that section 381(b) requires only that the acquisition be " * * * *described* in subparagraph (F) of section 368(a)(1)." [Emphasis supplied.] There is no requirement, as in section 381(a)(2), that the transaction be one which is subject to the nonrecognition provisions of section 361.

Defendant cites to us the case of Kansas Sand & Concrete, Inc. v. Commissioner, 462 F.2d 805 (10th Cir. 1972), for the general proposition that the section 332 liquidation provisions take precedence over the reorganization provisions. The question of precedence [13] really depends upon whether an intention was evident to make one provision exclusive in a particular context. We have noted such an intention with respect to divisive "D" reorganizations and section 355. See *Columbia Gas* and *Gordon, supra.* In the context of the instant case, we have noted that the satisfaction of the stringent continuity of proprietary interest and business enterprise standards provide sufficient safeguards as a test of "F" reorganization status. Thus, it is really beside the point that the transaction is technically within the broader provision of section 332. Obviously, all section 332 liquidations could not qualify for section 381(b) carryback exception, but those liquidations which are also "F" reorganizations can and should so qualify. Once the strict standards for "F" status are met, additional qualification under section 332 does not cause the test of those strict standards to be less meaningful.

In *Kansas Sand & Concrete,* stock had been purchased and a merger followed in order to acquire the subsidiary's assets. The issue became one of basis. If the transaction was to be treated as an "A" reorganization, then the basis would be determined by section 362(b), allowing the taxpayer to carry over the adjusted basis assigned to the assets by the acquired company on the date of the merger. The Government argued that a 334(b)(2) basis was proper, thereby requiring the taxpayer to allocate its basis in the acquired company's stock among the assets received from the acquired company. The Tenth Circuit cited Treas.Reg. § 1.332–2(d) and recognized

---

13. The question of which provision is to control is entirely different from the question of whether the transaction can be recharacterized depending upon the result. We think it obvious that the Government cannot have one *definition* of "F" reorganization for liquidation-reincorporation purposes and another for section 381(b) carryback purposes:

"We do not see how the definitive principles of an "F" reorganization can change from one case to another, from one context to another, dependent upon which position the Commissioner of Internal Revenue prefers. While the factual situation which gives rise to a determination in a given case will invariably differ, the standards by which the determination is to be made cannot. An "F" reorganization is just that, and tax consequences flow from that determination, not vice versa." [Estate of Stauffer v. Commissioner, *supra,* 403 F.2d at 619.]

that the operative nonrecognition provision was section 332(a) and, thus, the controlling basis provision was section 334(b)(2):

> * * * Thus the transaction, even though qualifying under Section 368(a)(1)(A) as a reorganization must be treated as a complete liquidation for federal income tax purposes. We hold that Section 332 takes precedence over Section 368 *in these particular circumstances.* * * * [Emphasis supplied.]   [462 F.2d at 807.]

We interpret this case as merely holding that, under the circumstances, section 334(b)(2) was the exclusive basis provision. In the instant case, however, we are dealing with a provision (section 381(b)) hinged *only* to definitionally qualifying "F" reorganizations. Thus, *Kansas Sand & Concrete* is perfectly consistent with our holding.

For the foregoing reasons, we hold that the statutory merger of subsidiary into parent was a section 368(a)(1)(F) reorganization. Therefore, the plaintiff may carry back a post-merger loss to pre-merger years under section 381(b).[14] The fact that the transaction technically also qualified as a 332 liquidation does not preclude relief. The amount of recovery will be determined in subsequent proceedings pursuant to Rule 131(c).

### CONCLUSION OF LAW

Upon the foregoing opinion, which contains the essential findings of fact as stipulated by the parties, the court concludes as a matter of law that the plaintiff is entitled to recover and judgment is entered to that effect. The amount of recovery will be determined in subsequent proceedings pursuant to Rule 131(c).

---

14. It should be noted that the amounts claimed by the plaintiff are consistent with the equitable principle announced in Libson Shops v. Koehler, *supra* footnote 5, that a loss could not be utilized in such a way as to produce greater tax benefit than the loss would have produced had there been no merger. Thus, the taxpayer is entitled to carry back to prior years of the predecessor corporation only that portion of the post-reorganization loss that was sustained by the business, operated by the predecessor corporation. See Estate of Stauffer, *supra,* 403 F.2d at pp. 621–622.