STANDARD LIFE & ACCIDENT IN-
SURANCE COMPANY, Appellant,

v.

COMMISSIONER OF INTERNAL
REVENUE, Appellee.

No. 75–1075.

United States Court of Appeals,
Tenth Circuit.

Nov. 6, 1975.

Rehearing Denied Jan. 8, 1976.

Gene A. Castleberry, Oklahoma City, Okl., for appellant.

Meade Whitaker and Gary R. Allen, Attys., Tax Div., Dept. of Justice, Washington, D. C. (Scott P. Crampton, Asst. Atty. Gen., Washington, D. C., Gilbert E. Andrews and Bennet N. Hollander, Attys., Tax Div., Dept. of Justice, Washington, D. C., on the brief), for appellee.

Before HOLLOWAY, McWILLIAMS and BARRETT, Circuit Judges.

BARRETT, Circuit Judge.

Standard Life & Accident Insurance Company (taxpayer) appeals a Tax Court decision [1] which upheld the Commissioner's deficiency determination against taxpayer for the years 1958, 1959 and 1961. A recitation of the pertinent facts, which were fully stipulated to, will facilitate our review.

Taxpayer, an Oklahoma corporation, is a life insurance company as defined by the Internal Revenue Code, 26 U.S.C.A. §§ 801–820. Taxpayer's operations are subject to regulations adopted by the Insurance Commissioner of Oklahoma. It is further subject to periodic audit by the National Association of Insurance Commissioners (NAIC), which acts on behalf of the insurance departments of the various states.

Taxpayer receives income in the form of premiums which are the agreed price for assuring and carrying a particular risk. The "gross premium" is the amount actually charged an insured. It includes the "net valuation premium" and "loading". The "net valuation premium" equals that sum of money necessary under applicable mortality tables to provide the benefits of the policy. This sum is required by Oklahoma law to be added to the policy reserve each year.

"Loading" is that amount added to the "net valuation premium" for acquisition, management, and operating expenses, profits, and dividends.[2] Policyholders pay their premiums in semi-annual, quarterly, or monthly installments.

"Deferred premiums" are premiums due on policies with installment payments. They become due after December 31st of each calendar year but before the anniversary date of the policy. "Due and unpaid premiums" or "uncollected premiums" are premiums which are due and payable before the end of the year but which have not been paid. These policies have a 31-day grace period, or longer, for the payment of premiums, during which the policy is carried in full force and effect. *There is no obligation, legal or otherwise, on an insured to pay the insurer taxpayer deferred, due and unpaid or uncollected premiums. Nonpayment merely causes the policy to lapse.*

Taxpayer is required by the State of Oklahoma and the NAIC to compute its reserves on the majority of its policies as though all premiums are paid up one year in advance of the policy's anniversary date, even though, in actuality, this is generally not the case. These reserves are treated as a liability to an insurance company and considered in making computations under 26 U.S.C.A. §§ 805 (assets) and 809 (gain from operations) of the Life Insurance Company Income Tax Act of 1959.

In filing its tax return for 1958, taxpayer did not include any amount of deferred and uncollected or due and unpaid premiums in computing its assets under Section 805. In filing its return for 1959 and 1961, taxpayer included in its assets only the net valuation premiums (loading was excluded) with respect to its deferred and uncollected and due and unpaid premiums. Furthermore, in 1958, 1959 and 1961, taxpayer also claimed deductions for the increases in loading in

---

1. T.C. Memo, 1974–242, Filed September 18, 1974.

2. Loading is based on an independent judgment of each company.

computing its gains from operations under Section 809.

On October 31, 1957, taxpayer purchased a block of insurance policies from United Founders Life Insurance Company at a net cost of $219,524.21. Thereafter, taxpayer purchased a block of insurance policies from Commonwealth Life Insurance Company at a net cost of $247,098.22. On October 1, 1960 taxpayer also purchased a block of insurance policies from Great Western Life Insurance Company at a net cost of $77,-280.29. On its respective returns, taxpayer deducted as expenses in the years paid, the current costs of the purchase of the blocks of insurance.

The Commissioner held that deferred and uncollected, and due and unpaid premiums must be included under Section 805 as assets and that none of said premiums may be deducted in determining gain from operations under Section 809. The Commissioner also ruled that no portion of the acquisition costs of the blocks of insurance bought in 1957, 1960 and 1961 was deductible.

On de novo review, the Tax Court relied upon *Bankers Union Life Insurance Co.,* 62 T.C. 661 (1974), in holding that deferred and uncollected premiums and due and unpaid premiums must be considered assets and that the premiums could not be excluded from taxpayer's gain from operation under Section 809. The Tax Court relied upon *International Life Insurance Co. v. Commissioner of Internal Revenue,* 51 T.C. 765, 773 (1969), affirmed per curiam, 427 F.2d 137 (6th Cir. 1970), in its holding that no portion of the cost of acquiring the blocks of cancellable accident and health policies was deductible.

On appeal, taxpayer presents three issues: (1) Whether unpaid premiums[3] and, a fortiori, loading portions thereof are not assets of a life insurance company; (2) Whether unpaid premiums are included in a life insurance company's underwriting income; and (3) Whether purchased blocks of cancellable accident

and health insurance policies are wasting assets, the costs of which may be amortizable over their useful lives.

## I.

■ Taxpayer contends that unpaid premiums and, a fortiori, the loading portions thereof, are not assets of a life insurance company, and accordingly should not be considered assets includable under 26 U.S.C.A. § 805. Taxpayer argues that previous cases have erroneously held that because unpaid premiums are included in *reserves,* giving rise to a *liability,* such premiums must also be included as an *asset* in computing a life insurance company's taxable investment income. Taxpayer recognizes authority contrary to its position, e. g. *Franklin Life Insurance Company v. United States,* 399 F.2d 757 (7th Cir. 1968), cert. denied 393 U.S. 1118, 89 S.Ct. 989, 22 L.Ed.2d 122 (1969), *Jefferson Standard Life Insurance Company v. United States,* 408 F.2d 842 (4th Cir. 1969), cert. denied 396 U.S. 828, 90 S.Ct. 77, 24 L.Ed.2d 78 (1969), *Western National Life Insurance Company of Texas v. Commissioner of Internal Revenue,* 432 F.2d 298 (5th Cir. 1970), and *Western & Southern Life Insurance Company v. Commissioner of Internal Revenue,* 460 F.2d 8 (6th Cir. 1972), cert. denied 409 U.S. 1063, 93 S.Ct. 555, 34 L.Ed.2d 517 (1972). Taxpayer argues that these decisions are in error because "courts have uniformly overlooked or failed to give sufficient thought to the fact a company cannot be required to include as assets funds which it does not have."

Taxpayer persuasively contends that although it is obligated to establish reserves for each of its policies, and that the reserves actually exist as a liability, the unpaid premiums do not exist until actually paid. Taxpayer pointedly observes that while the law requires the reserves, it does not require the payment of the premiums which generate the reserves.

---

**3.** Hereinafter, unless otherwise specifically noted, "unpaid premiums" will designate deferred and uncollected premiums and due and unpaid premiums.

The Commissioner of Internal Revenue (Commissioner) contends that the "Tax Court's determination that such premiums [unpaid] must be included in full in the company's 'assets' for the purposes of computing its 'taxable investment income' under Sections 804 and 805—and must similarly be taken into account in full, without offset or deduction for the loading thereon, in calculating gross premiums for the purpose of computing the company's 'gain from operations' under Section 809, 'is in accord with the pertinent Treasury Regulations and also with the decisions of the four courts of appeal that have previously considered the questions presented herein.' "

In considering the cases supportive of the Commissioner's position, and recognized by taxpayer, *supra,* it is significant, we believe, that one of those courts acknowledged that declaring unpaid premiums to be assets was a fiction:

> The assumption that the annual premium has been received in full is, of course, a fiction, since annual premiums on all policies have not been received as of the end of the taxable year; rather, a portion thereof remains deferred and uncollected. [It being stipulated in our immediate case that there is no obligation, legal or otherwise, on an insured to pay _ _ unpaid premiums.] *Franklin Life Insurance Company,* supra, 399 F.2d at 760–761.

It is abundantly clear that the other three courts concentrated on *uniformity in accounting for reserves* (which are required by state law) *and in accounting for unpaid premiums* (which the Commissioner contends must be considered in determining the income tax due) in upholding the imposition of higher taxes for the insurance companies involved, irrespective of the fact that they did not realize additional income:

> Thus, if taxpayer treats its reserve liabilities for tax purposes with a full year's net valuation _ _ _ it should be required to include gross annual premiums . . .

*Jefferson Standard Life Insurance Co.,* supra, 408 F.2d at 856.

We agree with the other two courts that once the accrual method is used [as for reserves as required by state law] it must be applied uniformly [to unpaid premiums], even though the result would be that the asset figure resulting from applying the accrual basis to the gross premiums would not balance with the policyholders' share of the "net valuation premiums" [giving rise to an inflated asset figure]. *Western National Life Insurance Company of Texas,* supra, 432 F.2d at 301. Thus, if potential liability is to be accrued [reserves as required by state law], we conclude that potential profitability [assets under the pertinent federal tax laws] must also be accrued. *Western and Southern Life Insurance Company,* supra, 460 F.2d at 10.

We are not persuaded that the decisions relied upon by the Commissioner are controlling. They are predicated on a fiction and a desire to achieve accounting uniformity. No distinction is accorded the fact that reserves are mandated by state law for the protection of the insured, whereas income taxes are, uniformly, owing on *income actually earned.* We do not impute to Congress the intention to impose an income tax burden in any instant when income is not realized. "Potential profitability" should not give rise to a tax.

The Commissioner contends that since the applicable Treasury Regulation, 1.805–5(a)(4)(ii) includes unpaid premiums as assets, and that since this regulation is "plainly within the applicable provisions of the code", it must be enforced. We disagree.

We have no argument with the Commissioner's contention that Treasury Regulations "must be sustained unless they are unreasonable or inconsistent with the underlying statute", citing to *Commissioner of Internal Revenue v. South Texas Lumber Company,* 333 U.S. 496, 68 S.Ct. 695, 92 L.Ed. 831 (1948). It is by reason of this rule that we hold

that Treasury Regulation 1.805–5(a)(4)(ii) is void insofar as it includes unpaid premiums within assets.

Section 805(b)(4) defines assets:

(4) Assets.—For purposes of this part, the term "assets" *means all assets of the company* (including nonadmitted assets), other than real and personal property (excluding money) *used by it in carrying on an insurance trade or business.* For purposes of this paragraph, the amount attributable to—

> (A) real property and stock shall be the fair market value thereof, and
>
> (B) any other asset shall be the adjusted basis (determined without regard to fair market value on December 31, 1958), of such asset for purposes of determining gain on sale or other disposition.

(Emphasis supplied).

Regulation 1.805–5(a)(4)(ii) expands upon the items included within assets:

> (ii) *Illustration of principles.* The provisions of subdivision (i) of this subparagraph may be illustrated by the following examples:
>
> *Example* (1). Included in the statement of P., a life insurance company, are the following items: Bonds; stock; mortgages; _ _ _ premiums deferred and uncollected and premiums due and unpaid, bank deposits, _ _ _ .

Assets under Section 805(b)(4) includes "all assets of the company _ _ _ used by it in carrying on an insurance trade or business." Under Section 805(b)(4)(B) the value of "any other asset" [exclusive of real property and stock set forth under Section 805(b)(4)(A)] shall be its "adjusted basis". Since the Commissioner has stipulated throughout[4] that taxpayer has no legal, enforceable right to collect any unpaid premiums, it is, as we view it, obvious that unpaid premiums are not "assets

used by a company in carrying on a trade or business" and that they cannot have any viable "asset" basis until collected. We see no merit in attributing an artificial meaning to the word "asset" absent strong (and for our part, overwhelming) policy reasons for doing so. See *Realty Loan Corporation v. Commissioner of Internal Revenue,* 478 F.2d 1049 (9th Cir. 1973). We hold that the regulation exceeds the scope of its statutory genesis. *United States v. Correll,* 389 U.S. 299, 88 S.Ct. 445, 19 L.Ed.2d 537 (1967). We hold it void insofar as it includes unpaid premiums as referred to herein (see footnote 3). We are comforted somewhat in the knowledge that our view was previously held by the Tax Court, which has vacillated considerably on this issue:

> _ _ _ only resort to medieval metaphysics could translate the items in question [deferred and uncollected premiums] into "assets".
>
> *Western National Life Insurance Company of Texas v. Commissioner,* May 13, 1968.

The Commissioner further contends that since reserves must be accrued, unpaid premiums must likewise be accrued. We disagree. We have previously observed that reserves are set aside for the protection of the insured. Reserves are not discretionary. They are mandated by state insurance commissions. Income tax, on the other hand, is to be paid for income earned, when it is earned. We will not adopt the Commissioner's argument that "accounting symmetry" is necessary when, in doing so, we would endorse the imposition of income taxes before income has actually been earned. This we shall not do. Cf. *Colorado Springs National Bank v. United States,* 505 F.2d 1185 (10th Cir. 1974), wherein we held that compulsory accounting rules of a regulatory agency do not control tax consequences. For a similar

---

4. The tenth stipulation provides:

There is no obligation, legal or otherwise on an insured to pay to the insurer deferred & uncollected or due and unpaid premiums. If the policyholder does not pay the premium in conformity with the provisions of the policy, the policy is lapsed after the grace period and appropriate adjustments are made.

holding see *Mountain Fuel Supply Company v. United States,* 449 F.2d 816 (10th Cir. 1971).

Applying the Commissioner's contentions and proposition to several other businesses, in our judgment, lays bare its fallacies. Under the Commissioner's theory a landlord, having entered into a one year lease, which included the right of either party to terminate upon thirty days notice, would have an asset for all the unpaid rentals, and an asset to be considered in determining the income tax to be paid by the landlord, even though the landlord has no guarantee of receiving all of the rental payments. Further pursuing the Commissioner's theory, a bank or any other business entity should consider its contingent accounts receivable, in which it has no legally enforceable right, as income for income tax purposes.

The burden is, of course, always on the taxpayer to establish that he is entitled to a particular deduction or refund. *Lockhart Leasing Company v. United States,* 446 F.2d 269 (10th Cir. 1971); *Kasishke v. United States,* 426 F.2d 429 (10th Cir. 1970); *Harper Oil Company v. United States,* 425 F.2d 1335 (10th Cir. 1970). And determinations of the Tax Court must be sustained if evidence is present to support them. *Hayutin v. Commissioner of Internal Revenue,* 508 F.2d 462 (10th Cir. 1974).

In light of the facts of this case, we hold that the taxpayer has met its burden and that the determinations of the Tax Court cannot be sustained. In *Kansas Sand and Concrete, Inc. v. Commissioner of Internal Revenue,* 462 F.2d 805 (10th Cir. 1972), we noted that which we deem applicable here:

> In passing we are compelled to observe that in this case the taxpayer proceeded in all good faith. We are cognizant of the difficulties confronting officials charged with the obligation of drafting tax regulations interpretive of and construing the complexities of the Internal Revenue Code. The conflicts presented in this case might well have been avoided had the administrative drafters raised at least one or more "red flags" . . . . . Any taxpayer, we believe, is entitled to this much guidance and consideration.
>
> 462 F.2d at 808.

## II.

■ Taxpayer also contends that unpaid premiums should not be considered part of premium income under Section 809(c)(1). We agree. For similar reasons already discussed in "I" relative to assets, "Premium income" cannot extend to unpaid premiums in which a taxpayer has no legally enforceable right. On a parallel vein, regulation 1.809–4(a)(1)(i) cannot extend to unpaid premiums in which a taxpayer does not have a legally enforceable right. We will not allow income taxes to be assessed on "potential profitability."

## III.

■ Taxpayer contends that it should have been allowed to amortize blocks of cancellable accident and health insurance as wasting assets. Taxpayer cites *Union Bankers Insurance Co. v. Commissioner,* 64 T.C. No. 78 (August 6, 1975), for the proposition that such blocks of insurance may be amortized over a given period of time. We agree.

■ However, in *Union Bankers* an actuary expert testified on behalf of the taxpayer affording background and expertise for the Court's benefit determinative of a definite amortizable time period. Contrary thereto, in the case at bar, the evidence simply [by stipulation] established when the blocks were acquired along with the premiums received and claims paid over a ten year schedule. Such evidence, in and of itself, does not meet the standard of *Union Bankers* in which the amortization period was established. We hold that the proof relative to any specific amortization period was inadequate and, notwithstanding the propriety and applicability of *Union Bankers* within the proper factual situation, taxpayer was not entitled to amortize its blocks of cancellable accident and

health insurance policies. The Tax Court properly denied these deductions.

Reversed in part and affirmed in part.

McWILLIAMS, Circuit Judge (dissenting):

I dissent as to part I and II in the majority opinion. The precise matter at issue in parts I and II has been considered by four other Circuits, and in each instance such Circuit has reached a conclusion contrary to the result reached by the majority in the instant case. I am persuaded that the result reached by the Fourth, Fifth, Sixth and Seventh Circuits is the proper one. *See Western and Southern Life Insurance Company v. Commissioner,* 460 F.2d 8 (6th Cir. 1972), *cert. denied,* 409 U.S. 1063, 93 S.Ct. 555, 34 L.Ed.2d 517 (1972); *Western National Life Insurance Co. of Texas v. Commissioner,* 432 F.2d 298 (5th Cir. 1970); *Jefferson Standard Life Insurance Co. v. United States,* 408 F.2d 842 (4th Cir. 1969), *cert. denied,* 396 U.S. 828, 90 S.Ct. 77, 24 L.Ed.2d 78 (1969); and *Franklin Life Insurance Company v. United States,* 399 F.2d 757 (7th Cir. 1968), *cert. denied,* 393 U.S. 1118, 89 S.Ct. 989, 22 L.Ed.2d 122 (1969).