The AETNA CASUALTY AND SURETY COMPANY, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

No. 769, Docket 75–6131.

United States Court of Appeals, Second Circuit.

Argued May 12, 1976.

Decided Dec. 15, 1976.

Rehearing Denied Feb. 28, 1977.

Rehearing En Banc Denied March 25, 1977.

Marvin A. Chirelstein, New Haven, Conn. (William G. DeLana, J. Danford Anthony, Jr., and Day, Berry & Howard, Hartford, Conn., on the brief), for plaintiff-appellant.

George G. Wolf, Atty., Tax Div., Dept. of Justice, Washington, D.C. (Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews,

Jr., and Ernest J. Brown, Attys., Tax Div., Dept. of Justice, Washington, D.C., and Peter C. Dorsey, U.S. Atty., New Haven, Conn., on the brief), for defendant-appellee.

Before TIMBERS, Circuit Judge, and MacMAHON * and NEWMAN,** District Judges.

TIMBERS, Circuit Judge:

The questions here presented under the corporate reorganization provisions of the Internal Revenue Code appear to be of first impression, at least in this Circuit.

The corporate taxpayer, The Aetna Casualty and Surety Company, appeals from a judgment entered December 10, 1975 in the District of Connecticut, M. Joseph Blumen-

* Hon. Lloyd F. MacMahon, United States District Judge, Southern District of New York, sitting by designation.

** Hon. Jon O. Newman, United States District Judge, District of Connecticut, sitting by designation.

1. The district court's decision of October 15, 1975 was rendered on the parties' cross-motions for summary judgment. The taxpayer's motion was denied. The government's motion was granted. The taxpayer appealed on January 28, 1976 from the judgment entered December 10, 1975.

2. Unless otherwise stated, all statutory citations in this opinion are to sections of the Internal Revenue Code of 1954 as amended, which in turn correspond to sections of Title 26 of the United States Code, 1970 codification. Int.Rev.Code of 1954, § 172, 26 U.S.C. § 172 (1970), in relevant part provides:
Net operating loss deduction.
(a) Deduction allowed.
There shall be allowed as a deduction for the taxable year an amount equal to the aggregate of (1) the net operating loss carryovers to such year, plus (2) the net operating loss carrybacks to such year. For purposes of this subtitle, the term "net operating loss deduction" means the deduction allowed by this subsection.
(b) Net operating loss carrybacks and carryovers.
(1) Years to which loss may be carried. (A)(i) Except as provided in clause (ii) and in subparagraphs (D), (E), (F), and (G), a net operating loss for any taxable year ending after December 31, 1957, shall be a net operating loss carryback to each of the 3 taxable years preceding the taxable year of such loss.

feld, *District Judge,* 403 F.Supp. 498, granting the government's motion for summary judgment [1] and dismissing the complaint in a tax refund action brought by the taxpayer to recover federal corporate income taxes and interest for the taxable year 1963 in amount of $4,467,630.59 claimed to have been erroneously assessed and collected.

The central question is whether the corporate taxpayer, which was a subsidiary organized by its parent solely for the purpose of acquiring the assets and business of one of the parent's other subsidiaries, should be allowed as a deduction its post-reorganization net operating losses as carrybacks against the pre-reorganization income of its predecessor under §§ 172 and 381(b)(3) of the Internal Revenue Code.[2]

\* \* \*

(B) Except as provided in subparagraphs (C), (D), and (E), a net operating loss for any taxable year ending after December 31, 1955, shall be a net operating loss carryover to each of the 5 taxable years following the taxable year of such loss.

\* \* \*

Int.Rev.Code of 1954, § 381, 26 U.S.C. § 381 (1970), in relevant part provides:
Carryovers in certain corporate acquisitions.
(a) General rule.
In the case of the acquisition of assets of a corporation by another corporation—

\* \* \*

(2) in a transfer to which section 361 (relating to nonrecognition of gain or loss to corporations) applies, but only if the transfer is in connection with a reorganization described in subparagraph (A), (C), (D) (but only if the requirements of subparagraphs (A) and (B) of section 354(b)(1) are met), or (F) of section 368(a)(1), the acquiring corporation shall succeed to and take into account, as of the close of the day of distribution or transfer, the items described in subsection (c) of the distributor or transferor corporation, subject to the conditions and limitations specified in subsections (b) and (c).
(b) Operating rules.
Except in the case of an acquisition in connection with a reorganization described in subparagraph (F) of section 368(a)(1)—
(1) The taxable year of the distributor or transferor corporation shall end on the date of distribution or transfer.

\* \* \*

(3) The corporation acquiring property in a distribution or transfer described in subsection (a) shall not be entitled to carry back a

The answer to this question turns on whether the reorganization qualified as "a mere change in identity [or] form" within the meaning of § 368(a)(1)(F).[3]

For the reasons below, we hold that the reorganization did qualify as a § 368(a)(1)(F) reorganization and that the taxpayer should be allowed to carry back its losses against the pre-reorganization income of its predecessor pursuant to §§ 172 and 381(b)(3). Accordingly we reverse the judgment of the district court and remand with directions to enter judgment for the taxpayer.

## I. FACTS AND PRIOR PROCEEDINGS

In view of the district court's clear, comprehensive and detailed statement of the facts, 403 F.Supp. at 500–04, it is sufficient for our purpose to summarize only the essential facts believed necessary to an understanding of our rulings on the questions presented.[4] The facts are not in dispute.

### (A) Prior Proceedings

Aetna Life Insurance Company (Aetna Life) is a Connecticut corporation which writes and sells life, accident and health insurance. Prior to December 29, 1964 Aetna Life held 61.61% of the outstanding voting common stock of The Aetna Casualty and Surety Company (Old Aetna), a Connecticut corporation which wrote and sold liability, fire, theft, property damage and surety insurance. In November or December 1964 Aetna Life organized Farmington Valley Insurance Company (Farmington Valley), a Connecticut corporation which was a wholly owned shell subsidiary with no business or assets of its own, for the sole purpose of acquiring the business and assets of Old Aetna. On December 29, 1964 Old Aetna was merged into Farmington Valley in a complex, three-party reorganization described more fully below. As a result of this merger and the related stock transfers, minority shareholders of Old Aetna received shares of Aetna Life in return for their Old Aetna shares and the shares of Farmington Valley were placed in trust for the shareholders of Aetna Life. The name of Farmington Valley later was changed to The Aetna Casualty and Surety Company (New Aetna), plaintiff herein.

Pursuant to the loss carryback provisions of the Code, New Aetna sought to carry

---

net operating loss or a net capital loss for a taxable year ending after the date of distribution or transfer to a taxable year of the distributor or transferor corporation.

  \*　　\*　　\*

3. Int.Rev.Code of 1954, § 368, 26 U.S.C. § 368 (1970), in relevant part provides:

*Definitions relating to corporate reorganizations.*

(a) Reorganization.

(1) In general.

For purposes of parts I and II and this part, the term "reorganization" means—

(A) a statutory merger or consolidation;

(B) the acquisition by one corporation, in exchange solely for all or a part of its voting stock (or in exchange solely for all or a part of the voting stock of a corporation which is in control of the acquiring corporation), of stock of another corporation if, immediately after the acquisition, the acquiring corporation has control of such other corporation (whether or not such acquiring corporation had control immediately before the acquisition);

(C) the acquisition by one corporation, in exchange solely for all or a part of its voting stock (or in exchange solely for all or a part of the voting stock of a corporation which is in control of the acquiring corporation), of substantially all of the properties of another corporation, but in determining whether the exchange is solely for stock the assumption by the acquiring corporation of a liability of the other, or the fact that property acquired is subject to a liability, shall be disregarded;

(D) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor, or one or more of its shareholders (including persons who were shareholders immediately before the transfer), or any combination thereof, is in control of the corporation to which the assets are transferred; but only if, in pursuance of the plan, stock or securities of the corporation to which the assets are transferred are distributed in a transaction which qualifies under section 354, 355, or 356;

(E) a recapitalization; or

(F) a mere change in identity, form, or place of organization, however effected.

  \*　　\*　　\*

4. Although in applying the law to the facts we have reached a different conclusion than Judge Blumenfeld did, we express our appreciation for his characteristically perceptive opinion which we have found especially helpful in this case of first impression in our circuit.

back its net operating losses for the taxable period December 30 through 31, 1964 and the calendar year 1965 against the net income of Old Aetna for the calendar year 1963 and the period January 1 through December 29, 1964.[5]

The IRS allowed New Aetna to carry back the $7,213,547 net operating loss allocated to the period prior to the December 29, 1964 reorganization, see note 5, *supra*, to offset a part of Old Aetna's 1963 taxable income; but no part of New Aetna's net operating losses for the periods subsequent to December 29, 1964 was allowed as a carryback to offset Old Aetna's other 1963 taxable income.

As a result of the disallowance of the latter New Aetna paid federal income taxes for the calendar year 1963 in amount of $4,071,655.21, plus deficiency interest of $395,975.38. New Aetna filed a timely claim for refund to recover the sum of these two amounts ($4,467,630.59) plus statutory interest.

Following the disallowance of New Aetna's refund claim, the instant action was commenced on August 14, 1973 in the District of Connecticut. Jurisdiction was invoked under 28 U.S.C. § 1346(a) (1970). Both sides moved for summary judgment. The court, having found after a hearing that there was no dispute as to the material facts, filed an opinion on October 15, 1975, 403 F.Supp. 498, granting the government's motion for summary judgment and denying the taxpayer's motion for summary judgment. From the judgment entered December 10, 1975 dismissing the complaint, the instant appeal has been taken.

(B) *December 29, 1964 Merger*

In order better to focus on the corporate reorganization of December 29, 1964 which is at the core of this case, it is necessary to back up a bit and review certain events which led to that reorganization.

As a result of the Life Insurance Company Income Tax Act of 1959, Pub.L. No. 86–69, § 2(a), 73 Stat. 112, the federal income tax liability of insurance companies such as Aetna Life depended in part on the value of the assets held by the company. The greater the value of the company's assets, the greater the portion of its income which was subject to tax. See §§ 802(a)(1) and (b), 804(a)(1), 805(a)(1), (b)(2)(B), and (b)(4). Understandably, Aetna Life wished to remove its 61.61% ownership of Old Aetna from its tax base.

Aetna Life also wished to achieve an identity of ownership between the shareholders of Aetna Life and those of Old Aetna. Although the officers and directors of the two companies had been identical for several years prior to the reorganization, they had fiduciary duties to different groups of shareholders because of Aetna Life's 61.61% stock interest in Old Aetna. This prevented the two companies from further integrating their operations, from selling insurance together, and from taking other business steps which might have achieved operational economies. The diverse stock ownership of the two companies also required elaborate cost allocation accounting procedures.

The obvious way for Aetna Life to remove Old Aetna from its tax base would

---

**5.** Old Aetna actually sustained a net loss for the period January 1 through December 29, 1964 which it was allowed to carry back against its net income for the calendar year 1963. Old Aetna's net income for 1963, however, exceeded its net loss for the pre-merger period during 1964. This left Old Aetna with net income for the entire pre-merger period of 1963 through December 29, 1964.

Old Aetna and New Aetna had net income and net operating losses during the relevant 1963–1965 periods as follows:

| | Old Aetna | New Aetna |
|---|---|---|
| 1963 | $8,525,816.75 (after application of the net operating loss carryback for the period January 1, 1964, to December 29, 1964) | |
| January 1, 1964, to December 29, 1964 | $7,213,547 (carried back to 1963) | |
| December 30, 1964, to December 31, 1964 | | ($39,597) |
| 1965 | | ($11,554,725) |

have been for Aetna Life to distribute its Old Aetna stock to the Aetna Life shareholders. This would have resulted in taxable income to Aetna Life under § 802(b)(3) which makes certain portions of distributions to shareholders taxable to the life insurance company. See §§ 815(a)(1) and (b)(3).

Aetna Life therefore sought to persuade Congress to amend these provisions of the Code. In 1964 Congress enacted the Act of September 2, 1964, Pub.L. No. 88–571, § 4(a)(2), 78 Stat. 859, which added, *inter alia,* what is now § 815(f)(3)(B) of the Code.[6] This provided two avenues by which Aetna Life could distribute its Old Aetna stock without incurring tax liability to itself. § 815(f)(3)(B)(i) excluded from the definition of taxable distributions certain distributions of the stock of an 80% controlled corporation which is an insurance company if the distributing corporation obtained such control pursuant to a § 368(a)(1)(B) reorganization (stock for stock exchange) and if the distributing corporation at all times owned more than 50% of the controlled corporation. § 815(f)(3)(B)(ii) excluded from the definition of taxable distributions certain distributions of the stock of a 100% controlled insurance corporation provided (i) that control was obtained in exchange for the distributing corporation's own stock; (ii) that

the controlled corporation immediately exchanged the distributing corporation's stock to a third corporation in a § 368(a)(1)(A) reorganization (statutory merger or consolidation) or a § 368(a)(1)(C) reorganization (exchange of stock for assets); and (iii) that the distributing corporation had owned at least 50% of the third corporation's voting stock.

In order to bring itself within the provisions of the new law and thus avoid incurring tax liability to itself as a result of distributing its Old Aetna stock to its shareholders, Aetna Life devised a plan substantially as follows:

Aetna Life would organize Farmington Valley as a wholly owned shell subsidiary with no business of its own. Aetna Life would issue 13,300,000 shares of its voting common stock and exchange them for all 1,000 shares of Farmington Valley. Then, pursuant to a reorganization plan to be approved by the shareholders of Farmington Valley and Old Aetna, Farmington Valley would exchange its Aetna Life stock for the voting common stock held by Old Aetna shareholders in the ratio of 1.9 shares of Aetna Life stock for each share of Old Aetna stock. Aetna Life would retire the Aetna Life stock which it received in return for its 61.61% stock interest in Old Aetna. Farmington Valley would cancel its newly acquired Old Aetna stock. Then by opera-

6. Int.Rev.Code of 1954, § 815, 26 U.S.C. § 815 (1970), in relevant part provides:
   (f) Distribution defined.
   For purposes of this section, the term "distribution" includes any distribution in redemption of stock or in partial or complete liquidation of the corporation, but does not include—
     *    *    *
   (3) any distribution after December 31, 1963, of the stock of a controlled corporation to which section 355 applies, if such controlled corporation is an insurance company subject to the tax imposed by section 831 and if—
   (A) control was acquired prior to January 1, 1958, or
   (B) control has been acquired after December 31, 1957—
     (i) in a transaction qualifying as a reorganization under section 368(a)(1)(B), if the distributing corporation has at all times since December 31, 1957, owned stock represent-

ing not less than 50 percent of the total combined voting power of all classes of stock entitled to vote, and not less than 50 percent of the value of all classes of stock, of the controlled corporation, or
   (ii) solely in exchange for stock of the distributing corporation which stock is immediately exchanged by the controlled corporation in a transaction qualifying as a reorganization under section 368(a)(1)(A) or (C), if the controlled corporation has at all times since its organization been wholly owned by the distributing corporation and the distributing corporation has at all times since December 31, 1957, owned stock representing not less than 50 percent of the total combined voting power of all classes of stock entitled to vote, and not less than 50 percent of the value of all classes of stock, of the corporation the assets of which have been transferred to the controlled corporation in the section 368(a)(1) (A) or (C) reorganization;
     *    *    *

tion of Connecticut's merger law Farmington Valley would succeed to all of the assets and liabilities of Old Aetna. Farmington Valley would change its name to The Aetna Casualty and Surety Company (New Aetna). Under that name New Aetna would carry on the business of Old Aetna. Aetna Life would distribute the 1,000 shares of Farmington Valley (now New Aetna) by putting them into a trust for the benefit of the Aetna Life shareholders. Evidence of a proportional beneficial interest in the trust would be stapled to each Aetna Life share so that both the Aetna Life shares and its proportional beneficial interest of New Aetna shares in the trust would always be held by the same owner.

On October 21, 1964 the Connecticut Insurance Commissioner approved the plan.

On October 23, 1964 the IRS issued a number of rulings which had been requested by Aetna Life with respect to the plan, including the following: that the merger of Old Aetna into Farmington Valley and the transfer of Aetna Life stock held by Farmington Valley to Old Aetna's shareholders would constitute a § 368(a)(1)(C) reorganization; and that the transfer by Aetna Life of its New Aetna stock to a trustee for the benefit of Aetna Life shareholders would be non-taxable to Aetna Life and its shareholders under §§ 355 and 311.

On November 24, 1964 the shareholders of Aetna Life and Old Aetna approved the plan. The reorganization was carried out on December 29, 1964.

(C) *Claims In District Court And Rulings Thereon*

In support of the taxpayer's claim that it was entitled to carry back its post-reorganization operating losses against the pre-reorganization income of Old Aetna under §§ 172 and 381(b)(3), New Aetna made three basic arguments in the district court. First, it argued that the transactions pursu-

ant to which it merged with Old Aetna did not constitute a "reorganization" within the meaning of §§ 368 and 381, but merely a "redemption" of the minority shareholders' interest in Old Aetna. *Casco Products Corp.*, 49 T.C. 32 (1967), *appeal dismissed*, No. 32261 (2 Cir., June 11, 1968). Second, it argued that, even if there was a "reorganization," the merger of Old Aetna into New Aetna constituted a § 368(a)(1)(B) reorganization even if it also constituted a reorganization under § 368(a)(1)(C), and that § 381(b)(3) does not prohibit carrybacks in the case of a § 368(a)(1)(B) reorganization.[7] Third, it argued that the merger of Old Aetna into the shell which later became New Aetna was a "mere change in identity [or] form" within the meaning of § 368(a)(1)(F) and that New Aetna therefore was entitled to the carryback under § 381(b)(3), which expressly excludes (F) reorganizations from the prohibition against carrybacks.

Judge Blumenfeld held that the merger of Old Aetna into New Aetna was a "reorganization"; that the transactions did constitute a § 368(a)(1)(C) reorganization; and that the merger of Old Aetna into the new shell which became New Aetna was not a "mere change in identity [or] form" within the meaning of § 368(a)(1)(F). In holding that the merger did not qualify as an (F) reorganization, the judge acknowledged that a reorganization could be an (F) reorganization while at the same time falling within one of the other classes of reorganizations defined by § 368(a)(1). He held however that the instant reorganization did not qualify as an (F) reorganization because during its course there was a shift in the ownership of Old Aetna. In support of this holding the judge emphasized the fact that the 38.39% minority shareholders were forced to exchange their Old Aetna stock for Aetna Life stock, together with the

---

7. In this connection New Aetna argued that the carryback prohibition of § 381(b)(3) applies only to a distribution or transfer described in subsection (a) and that that subsection applies only to "the acquisition of assets of a corporation by another corporation . in a transfer . . . in connection with a reorganization described in subparagraph (A), (C), (D) . . . or (F) of section 368(a)(1). . ." Int.Rev.Code of 1954, § 381(a)(2), 26 U.S.C. § 381(a)(2) (1970); see Treas.Reg. § 1.381(a)–1(b)(3)(i) (1960).

interest in New Aetna which they received as a result of Aetna Life's placing the New Aetna stock in a trust for the benefit of Aetna Life shareholders.

## II. INTERNAL REVENUE CODE PROVISIONS AND THEIR APPLICATION TO THIS REORGANIZATION

### (A) Code Provisions

In view of the complexity of the Code provisions here involved, a brief summary of the relevant provisions, and their interrelationship one to the other, may be helpful to an understanding of our rulings below.

■ § 172 provides generally that a corporation may carry back its net operating losses against the three preceding years' income and that it may carry over such losses to five succeeding years until they are exhausted.[8] In allowing corporations to spread losses over a nine year period, § 172 is intended to equalize the tax treatment of a corporation whose income may fluctuate from year to year with that of other corporations whose incomes may be relatively constant.

§ 381 deals with carrybacks and carryovers where there has been a corporate "reorganization" as that term is defined in § 368(a)(1). § 381(b)(3) provides that—except for reorganizations under § 368(a)(1)(F) ("a mere change in identity, form or place of organization, however effected") —the acquiring corporation "in a distribution or transfer described in subsection (a)" may not carry back its losses against the pre-acquisition income of the acquired corporation. Since § 381(a) does not apply to reorganizations under § 368(a)(1)(B) (acquisition by one corporation of the controlling interest in another corporation in exchange for its own or its parent's stock) or under § 368(a)(1)(E) (recapitalizations), the prohibition of § 381

(b)(3) against carryback does not apply to those types of reorganizations. § 381(b) (3) does prohibit carrybacks after reorganizations under § 368(a)(1)(A) (statutory merger or consolidation).[9] § 368 (a)(1)(C) (acquisition by one corporation of substantially all of the assets of another in exchange for the stock of the acquiring corporation or its parent), and § 368 (a)(1)(D) (transfer of assets of one corporation to another where the transferor or its shareholders control the transferee and the transferor distributes to its shareholders its stock in the transferee)—*unless the reorganization also qualifies as "a mere change in identity [or] form" under § 368(a)(1)(F).*

■ § 381(b)(3) does not prevent the acquiring corporation from carrying back its losses against its *own* pre-reorganization income, even if those losses resulted from the operations of the non-surviving corporation. The purpose of § 381(b)(3) was to provide a hard and fast rule that the acquiring corporation may not carry back losses to the pre-reorganization tax years of the transferor corporation—unless the acquisition qualifies as a § 368(a)(1)(F) reorganization. § 381(b)(3) avoids the need for divisional accounting and prevents the manipulation that would result if the acquiring corporation were allowed to apportion current losses between the operations acquired from each of the predecessor corporations.

■ § 368, which defines various types of "reorganizations", depends for its effect on other provisions of the Code. § 354 provides (with qualifications) that there shall be no gain or loss to shareholders who exchange their stock in one corporation for stock in another corporation pursuant to a plan of "reorganization" between the corporations. Under § 361 a corporation does not realize a gain or sustain a loss when it

---

**8.** The deductions allowed in § 172 are made available to casualty insurance companies such as New Aetna by § 832(c)(10).

**9.** Prior to the addition of § 368(a)(2)(D) to the Code in 1968, Act of Oct. 22, 1968, Pub.L. No. 90–621, § 1(b), 82 Stat. 1311, § 368(a)(1)(A) included only mergers or consolidations effect-

ed through an exchange of the stock of the merging companies. The transaction here involved did not qualify as a § 368(a)(1)(A) merger prior to 1968 because the stock exchanged for Old Aetna stock was not Farmington Valley stock, but Aetna Life stock.

transfers its assets to another corporation in exchange for stock in the other corporation pursuant to a plan of reorganization. See also §§ 356, 357, 358, 361, 362(b) and 381.

Prior to the 1954 revision of the Code, the lines of demarcation between what are now § 368(a)(1)(F) reorganizations and other types of reorganizations under § 368(a)(1) were not nearly as significant as the boundaries between reorganizations in general and transactions which did not qualify as reorganizations. Under §§ 354 and 361 certain transactions were tax free if carried out pursuant to a plan of reorganization. Distributions to shareholders might be taxed at capital gains rates if made as part of a corporate "liquidation", while certain distributions of corporate profits to shareholders pursuant to "reorganizations" could be taxed as regular income.

In 1954 Congress completely revised the Code. With the addition of § 381 and the significance of § 368(a)(1)(F) to the operation of the carryback and accounting provisions of § 381,[10] it became more important to delineate the boundaries between a § 368(a)(1)(F) reorganization and other types of reorganizations than previously had been the case. *Reef Corp. v. Commissioner,* 368 F.2d 125, 136 (5 Cir. 1966), *cert. denied,* 386 U.S. 1018 (1967).

Unlike the other subsections of § 368(a)(1) which contain definitions of various types of reorganizations, § 368(a)(1)(F) on its face says very little. What may be "a mere change in identity [or] form" for one purpose may not be for another purpose. At least one other Circuit which has dealt with this provision of the Code, in the context of interpreting the provisions relating to tax-exempt transactions, or determining whether certain corporate transac-

tions constitute liquidations or reorganizations, has assumed that a transaction deemed an (F) reorganization for those purposes must also be an (F) reorganization for purposes of § 381. E. g., *Estate of Stauffer v. Commissioner,* 403 F.2d 611, 619 (9 Cir. 1968); but see *Gordon v. Commissioner,* 424 F.2d 378, 384 (2 Cir.), *cert. denied,* 400 U.S. 848 (1970). That is a matter we need not decide in the instant case.

### (B) *Claims In Court of Appeals And Our Rulings Thereon*

Stripped to its essentials, the critical elements of the reorganization here involved were the following: Aetna Life owned 61.61% of Old Aetna. Aetna Life organized New Aetna (then Farmington Valley) as a 100% owned subsidiary solely to acquire Old Aetna. New Aetna had no business or assets of its own. New Aetna acquired Old Aetna's assets on December 29, 1964. As an incident of the reorganization, the 38.39% minority shareholders of Old Aetna exchanged their Old Aetna stock for Aetna Life stock. These minority shareholders retained a reduced proprietary interest in the business of the subsidiary upon the distribution by Aetna Life of the New Aetna stock which was placed in a trust for the benefit of Aetna Life shareholders.

New Aetna argues that this reorganization was a § 368(a)(1)(B) one. It also argues that § 381(b)(3) was not intended to apply to a reorganization of this type where the acquiring corporation was a mere shell with no business or tax history of its own.

The government argues that the reorganization was a § 368(a)(1)(C) one. It further argues that·§ 381(b)(3), including the exception for § 368(a)(1)(F) reorganizations, was intended to prevent an acquiring corporation from carrying back its losses to offset the acquired corporation's pre-reorgani-

---

10. During its deliberations on the 1954 revision of the Code, the House apparently considered deleting § 368(a)(1)(F) as unnecessary; but after protest in the Senate hearings, subsection (F) was retained. See Hearings on H.R. 8300 Before The Senate Committee on Finance, 83d Cong., 2d Sess. 403, 539–40 (1954); see also *Estate of Stauffer v. Commissioner,* 403 F.2d 611, 616 (9 Cir. 1968), and sources cited therein.

The original House version of § 381 contained no reference to subsection (F) of § 368(a)(1), and did not allow carrybacks in any transaction covered by § 381. As a result of protests during the Senate hearings on § 381 that the bill would prevent carrybacks where there had been no more than a change in identity, form, or place of organization, § 381 was revised to exclude (F) reorganizations from the effect of § 381(b)(3).

zation income whenever the reorganization involved a shift in proprietary interests.

We need not rule upon Aetna's claim that its merger with Old Aetna was a reorganization under § 368(a)(1)(B) even if it also was covered by § 368(a)(1)(C), since under the circumstances of this case § 381(b)(3) does not bar the loss carryback. While the transactions did involve the type of stock-for-stock exchange contemplated by § 368(a)(1)(B), they also involved acquisition of Old Aetna's assets by New Aetna.

■ As the district court recognized, however, reorganizations under § 368(a)(1)(A)–(E) may qualify also under § 368(a)(1)(F); and it is well settled that many (F) reorganizations do fit within the types of reorganizations defined by the other subsections of § 368(a)(1). *Gordon v. Commissioner, supra,* 424 F.2d at 384; *Associated Machine v. Commissioner,* 403 F.2d 622, 624 (9 Cir. 1968); *Reef Corp. v. Commissioner, supra,* 368 F.2d at 136; *Davant v. Commissioner,* 366 F.2d 874, 883 (5 Cir. 1966), *cert. denied,* 386 U.S. 1022 (1967); *Movielab, Inc. v. United States,* 494 F.2d 693, 698–99 (Ct.Cl.1974).

■ Absent the shift in the proprietary interests of the minority shareholders of Old Aetna, there would be no basis for contending that the merger of Old Aetna into a shell corporation, which had no business or assets of its own, did not qualify as a § 368(a)(1)(F) reorganization. The government has acknowledged in the past that such a reorganization is "a mere change in identity [or] form" for purposes of §§ 368(a)(1)(F) and 381(b)(3). E. g., *Associated Machine v. Commissioner, supra,* 403 F.2d at 624; *Movielab, Inc. v. United States, supra,* 494 F.2d at 697. The government does not contend to the contrary here. We know of no authority for the proposition that the merger of one corporation into a mere corporate shell does not constitute a § 368(a)(1)(F) reorganization.

The government argues, however, that we should reach a different result here merely because the 38.39% minority shareholders of Old Aetna were forced to exchange their Old Aetna stock for Aetna Life stock.[11] We disagree.

Although this precise question is presented in the instant case for the first time in this Circuit, similar claims have been made in a number of other cases. In *Casco Products Corp. v. Commissioner, supra,* the Tax Court dealt with a very similar situation in which a parent corporation merged a subsidiary into a newly organized shell in order to freeze out a 9% minority shareholder interest. The Tax Court held that the transactions did not constitute a reorganization at all and that the new corporation was entitled to carry back its losses to the pre-merger tax years of its predecessor.

*Reef Corp. v. Commissioner, supra,* involved the merger of one corporation into a different shell corporation, together with the redemption of a 48% minority shareholder interest in the old corporation. There it was the government that urged that the 48% change in proprietary interest did not strip the transactions of their § 368(a)(1)(F) character for purposes of the accounting provisions of § 381(b). The court agreed that there had been an (F) reorganization.

In *Gordon v. Commissioner, supra,* 424 F.2d at 384, in the context of applying § 368(a)(1)(F) to § 354(b), we expressed some doubt whether a complete identity of shareholder interest is "an indispensable condition to the invocation of Section 368(a)(1)(F)."

■ The Code deals extensively with the tax consequences of redemptions. See § 302 *et seq.* Those provisions represent a comprehensive set of rules relating to the problems of partial and complete redemptions. Clearly a corporation which merely

11. Actually the minority shareholders of Old Aetna who exchanged their Old Aetna stock for Aetna Life stock retained a significant interest in New Aetna, since Aetna Life placed all of its New Aetna shares in a trust for the benefit of Aetna Life shareholders. It is not necessary to determine to what extent the Old Aetna minori- ty shareholders' proprietary interest in the subsidiary was reduced as a result of the entire reorganization, for we do not believe that this reorganization would lose its character as a § 368(a)(1)(F) reorganization even if there had been a complete redemption of the minority shareholders' stock.

redeems its minority shareholders' stock has not undergone a reorganization at all under § 368(a)(1) and is entitled to carry back its losses under § 172. We see no reason why the result should be different simply because the redemption occurs in the course of merging one corporation into a different shell. *Casco Products Corp. v. Commissioner, supra,* 49 T.C. at 36; *Reef Corp. v. Commissoner, supra,* 368 F.2d at 134–38. If the redemption, reorganization and carryback provisions were not intended to preclude carrybacks where there has been a simple redemption, we do not believe those provisions should be construed to preclude the carryback here involved.

■ Accepting arguendo the government's contention that Aetna Life had independent business reasons for freezing out the minority shareholders during the course of the merger of Old Aetna into New Aetna,[12] we do not believe that a redemption which occurs in the course of what otherwise would be a § 368(a)(1)(F) reorganization should strip the reorganization of its subsection (F) character. Even assuming that the merger could not be separated from the redemption, as apparently it was possible for the court to do in *Reef Corp. v. Commissioner, supra,* 368 F.2d at 134, we agree with the reasoning of the Fifth Circuit that a "redemption is not a characteristic of a reorganization. . . ." *Id.* at 136. This view also is implicit in the Tax Court's reasoning in *Casco Products Corp. v. Commissioner, supra.*[13]

■ We believe that where the issue is whether a corporation is entitled to a carryback after a corporate reorganization, § 368(a)(1)(F) should be construed with particular sensitivity to the purposes of § 381(b). The interplay between subsections (F) and (A)–(E) gains its principal significance under the Code through the application of § 381(b). Since New Aetna was merely a corporate shell with no business of its own, none of the accounting problems which motivated § 381(b)(3) is present here.[14] Indeed, since New Aetna had no pre-reorganization tax history of its own, application here of the carryback prohibition contained in § 381(b)(3) would prevent New Aetna from obtaining *any* carryback of its current losses, even though § 381(b)(3) does not prevent acquiring corporations in other types of reorganizations from carrying back losses to their *own* pre-reorganization tax years. We do not believe that the mere fact that a redemption has occurred should lead to so Draconian a result, particularly since § 172 manifests a legislative policy in favor of carrybacks which ordinarily would not be affected by a simple redemption.

Moreover, even assuming that § 368(a)(1)(F) should be given a fixed meaning in its application to the different provisions of the Code—a question which we need not decide here—our view of § 368(a)(1)(F) is not inconsistent with the implementation of those other provisions.

---

**12.** Aetna Life wanted to achieve an identity of ownership between itself and its subsidiary for the reasons stated above. Although Aetna Life could have made a tender offer to the minority shareholders of Old Aetna, that might have taken more time and might not have been successful.

**13.** We do not agree with the Tax Court's conclusion in *Casco Products* that there was no "reorganization". We believe that the language of § 368(a)(1), and that of § 368(a)(1)(F), in particular, is adequate to cover such transactions as the merger of a corporation into another shell. But the Tax Court's holding in *Casco Products* does accord with our view that a redemption which occurs in the course of what otherwise would have been a § 368(a)(1)(F) reorganization does not change its subsection (F) character.

**14.** Other Circuits have found § 368(a)(1)(F) reorganizations, for purposes of the carryback provisions, where two or more corporations merged—each with a business of its own and each owned in identical proportions by the same persons. *Associated Machine v. Commissioner, supra; Estate of Stauffer v. Commissioner, supra; Movielab, Inc. v. United States, supra.* This result may be consistent with the purposes of § 381(b)(3) where the respective business operations of the predecessor corporations continue to function separately and do not raise problems of accounting apportionment. *E. g., Estate of Stauffer v. Commissioner, supra.* That issue is not before us in the instant case.

In holding that the merger of Old Aetna into New Aetna did not qualify as a § 368(a)(1)(F) reorganization, the district court relied on *Helvering v. Southwest Consolidated Corp.,* 315 U.S. 194, 202–03 (1942), where the Supreme Court stated that "a transaction which shifts the ownership of the proprietary interest in a corporation is hardly 'a mere change in identity, form, or place of organization' . . . ." There the assets of an insolvent corporation were transferred to a new corporation which was owned and controlled by the old corporation's creditors. The shareholders of the old corporation received only a small minority interest in the new corporation. In determining whether there had been a "sale" of the old corporation's assets to the new corporation, or merely a reorganization, the Court dealt in one sentence with what is now § 368(a)(1)(F).

Here, unlike *Southwest Consolidated,* there was merely a shift in the proprietary interest of the *minority* shareholders of Old Aetna. The transaction here involved cannot be described accurately as a "sale" of one corporation's assets to another corporation. We agree with the Fifth Circuit that the instant reorganization might begin to look more like a "sale"—or at least might look less like a § 368(a)(1)(F) reorganization and a redemption—"if the change in proprietary interests were to new persons and less than 50% of the former stockholders' interest in the old corporation remained in the new corporation." *Reef Corp. v. Commissioner, supra,* 368 F.2d at 137. But that is not the situation here.[15]

We conclude that the reorganization of Old Aetna into New Aetna was a § 368(a)(1)(F) reorganization and that New Aetna is entitled to carryback its post-reorganization losses against the pre-organization income of Old Aetna pursuant to §§ 172 and 381(b)(3).

Reversed and remanded with directions to enter judgment for the taxpayer.

## ON PETITION FOR REHEARING

Petition for rehearing by the government, addressed to the panel, with respect to this Court's decision of December 15, 1976.

Petition denied.

## PER CURIAM:

The government has petitioned for rehearing, contending that our decision of December 15, 1976 in this case is in conflict with decisions of this and other courts as to the scope of § 368(a)(1)(F) of the Internal Revenue Code of 1954.

We think the government misapprehends the point of our decision. We are concerned in this case only with whether § 381(b)(3) of the Code bars the loss carryback that New Aetna claimed it was entitled to offset against pre-reorganization income of Old Aetna. In ruling that § 381(b)(3) did not bar the loss carryback, we concluded that the reorganization was exempted from the prohibition of § 381(b)(3) because it fell within the definition of § 368(a)(1)(F), and (F) reorganizations are specifically exempted from the bar of § 381(b)(3). We ruled that the reorganization was an (F) reorganization only for purposes of determining the reach of § 381(b)(3). We specifically declined to decide whether classifying a reorganization as an (F) reorganization for purposes of § 381(b)(3) would necessarily mean it is an (F) reorganization for purposes of other provisions of the Code. Ante 822.

None of the decisions of the Supreme Court or of the Courts of Appeals cited to us by the government as allegedly in conflict with ours involves the issue of whether a reorganization is an (F) reorganization for purposes of § 381(b)(3). Hence we consider our decision to be far narrower than the

---

15. Moreover, the broad dictum in *Southwest Consolidated* relied on by the district court may be of doubtful vitality. That case was decided under the 1939 Code. Int.Rev.Code of 1939, § 112(g)(1)(F), 26 U.S.C. § 112(g)(1)(F) (1952). Although the language of the present § 368(a)(1)(F) is substantially the same as that of its predecessor in the 1939 Code, Congress completely revised the Code in 1954, including new § 381. The subsection (F) reorganization under the 1954 Code serves an important function quite different from that of the predecessor section in the 1939 Code.

government apprehends and not in conflict with any appellate case that has been called to our attention.

We are concerned here with a reorganization in which a corporation is merged into a corporate shell with no prior business or tax history of its own. Since this reorganization presents none of the accounting or allocation problems that might arise in reorganizations involving two corporations each with a prior business and tax history, we concluded that Congress did not intend the loss carryback to be unavailable. In our view, it makes no difference whether effectuating Congressional intent in the circumstances of this reorganization is achieved by construing § 368(a)(1)(F) somewhat broadly to include the reorganization of Old and New Aetna, or by construing § 381(b)(3) somewhat narrowly so as to be inapplicable to this particular reorganization. Either way, a loss carryback favored by the policies of the Code, see §§ 172 and 832(c)(10), and not presenting the problems with which the prohibition of § 381(b)(3) was concerned, is allowed. Having decided only that narrow point, we hold that the petition for rehearing should be denied.

Petition denied.