**In the Matter of J.H.I., INC., Debtor.**

**Richard N. SHAINE, Trustee for Estate of J.H.I., Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**Bankruptcy No. 79–01675.**

United States Bankruptcy Court, D. New Jersey.

April 17, 1984.

Stark & Stark by Richard N. Shaine, Lawrenceville, N.J., for trustee.

Glen L. Archer, Jr., Asst. Atty. Gen., Tax Div. by D. Patrick Mullarkey, Chief, Civil Trial Sec., Northern Region, Robert L. Handros, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for the U.S.

## MEMORANDUM OPINION

WILLIAM LIPKIN, Bankruptcy Judge.

The matter in issue before this court relates to a contest between the United States Internal Revenue Service (IRS) and the Trustee, whereby the trustee seeks to reduce a claim filed by the IRS based upon a disallowance by IRS of a carry back loss.

Understandably, the trustee and the IRS have submitted a Stipulation of Facts, because of the inability to develop a complete scenario of events after the initial happening of payment of a tax by *a* taxpayer and subsequent credit to a *different named taxpayer*. It is this credit which IRS now refuses to recognize as a valid carry back loss.

It is necessary that I consider the facts leading up to the filing of the claim by IRS which supplements the facts in the stipulation.

On July 10, 1979 an Involuntary Petition for adjudication as a bankrupt was filed against the debtor, J.H.I., Inc. Service could not be effected upon the debtor or its officers and after issuance of alias summons and service on the Secretary of State, the debtor, J.H.I., Inc. was adjudicated a bankrupt on January 30, 1980 and Richard Shaine was appointed Trustee. Mr. Shaine, as Trustee, filed schedules, as he reconstructed the records.

On April 3, 1980 a first meeting of creditors was held and the Trustee examined Charles E. Liggio, the Executive Vice-President of the Debtor. Of interest was his testimony, which was consistent with the Stipulation to be referred to later herein, that the debtor's name was Mach Industries when formed in 1972 in New Jersey, and during the year *1976* the name was changed to J.H.I. His testimony, also consistent with the stipulation, disclosed that Mach Industries was owned by Prel Corporation. He further revealed that Prel had undergone Chapter XI proceedings in "New York City" (which would be the United States Bankruptcy Court, Southern District of New York) and Mach Industries was spun off. The name of Mach Industries was changed to J.H.I. He further testified that J.H.I. (Mach Industries) assumed the debt to First National State Bank of New Jersey (Bank). That debt was secured to the Bank by all personal and real estate assets of the debtor. The debt totaled over $1,500,000.00.

The record, however, further reveals that the debtor was indebted to Central Corporation of Savings and Loan Association on a debt secured by a first mortgage on the debtor's real estate in the sum of $1,550,-000.00. That creditor, by order of this court after notice and hearing, paid the trustee $15,000.00 for his interest in the real estate which was sold to it subject to the mortgages on the property including the debt to First National State Bank of New Jersey. Thus all assets have been disposed of and the Trustee presently has approximately $17,000.00 in his possession.

With this background of facts, I now set forth the pertinent facts which have been stipulated by the Trustee and IRS chronologically, but not verbatim, as set forth in the stipulation.

A corporation named Prel Corporation acquired the ownership of Mach *Industries* on *May 3, 1972*. This corporation ostensibly was not then engaged in the business of sale of lumber and building materials.

On *September 21, 1972* Prel Corporation acquired the ownership of Mach *Lumber* Co., Inc. On that same date all of the assets of Lumber were transferred to *Industries* by statutory merger of Lumber into Industries.

On or about September 18, *1973 Lumber* filed its income tax return for the period *March 1, 1972* to and including *September 21, 1972* in which it reported taxable income in the amount of $1,526,638.00 and a tax due thereon in the amount of *$727,-786.00* which *was paid*. Thus the profit was by a corporation during a period when it had no identity with Prel or Industries.

*Mach Industries* therefore was the operator of the business from September 21, 1972 and *Mach Lumber* was not the tax entity thereafter.

On January 27, 1975 Prel Corporation and its subsidiaries, of which *Mach Industries* was one, filed a consolidated tax return for the year *1974* in which it reported a net operating loss in the amount of $8,054,954.00. On or about February 6, 1975 there was filed in the name of *Mach Lumber Co.*, Inc., an application for tentative refund from carryback of net operating loss (Form 1139), in which of the reported loss of Prel Corporation and its subsidiaries for 1974, the sum of $1,328,262 was allocated to Mach *Industries* Inc. and carried back to the taxable period of *Mach Lumber* which ended September 21, 1972. As a result a refund of *$637,565.00* was requested. On March 3, 1975 IRS tentatively allowed the loss carryback and *paid*

to the *debtor* a *refund in the amount requested with interest in the amount of $6,585.26.*

The Stipulation of Facts Concludes as follows:

Subsequently, the IRS determined that the debtor was not entitled to the loss carryback and resulting refund. Accordingly, on October 9, 1980 the Internal Revenue Service filed with the court a proof of claim including income tax for the period that ended in September, 1972 in the amount of $637,565.00 with interest to the date of the petition in bankruptcy in the amount of $99,613.16. By amended proof of claim filed on or about May 3, 1983, the pertinent portion of the claim was amended to the amount of $637,565.00 with interest to the petition date of $279,991.46. The Internal Revenue Service claims a priority as to such sums. On December 30, 1982, the Internal Revenue Service assessed this tax against the debtor and, on the same date, mailed notice of the assessment to the trustee. In his motion, the trustee seeks reduction of the claim of the Service by the amount of this tax and interest.

To be noted is that the "carry back loss" refund, Form 1139, was filed by Mach Lumber Co., Inc. with explanation attached that it was acquired by Prel Corporation, Inc. on September 21, 1972 and Mach Industries Inc., the successor corporation to Mach Lumber Co., conducted all of the operations of the taxpayer subsequent to that date. For the year 1974 Prel filed a consolidated return in which it shows a net operating loss which can be carried back to the third preceding year. Attached also was the consolidated net operating loss apportionment by Prel Corporation which included the loss by Mach Industries, Inc.

The trustee relies upon the provision of 26 U.S.C. § 368 and particularly 368(a)(1)(F) whereby a carryback loss is permitted to a corporation other than the transferor paying corporation if the transferee claimant corporation is in effect the same as the paying corporation. The wording of the applicable section is as follows:

(a) Reorganization—(1) In general.—For purposes of parts I and II and this part, the term "reorganization" means—(F) a mere change in identity, form, or place of organization, however affected.

In conjunction with section 368 the right to carryover the loss for a period prior to or subsequent to the taxing year is provided for under the provisions of 26 U.S.C. § 381 wherein it is provided:

Carryovers in Certain corporate acquisitions (a) General rule.—In the case of the acquisition of assets of a corporation by another corporation—(2) in a transfer to which section 361 (relating to nonreorganization of gain or loss to corporations) applies, but only if the transfer is in connection with a reorganization described in subparagraph (A), (C), (D) (but only if the requirements of subparagraphs (A) and (B) of section 354(b)(1) are met), or (F) of section 368(a)(1). underlining added.

■ These sections have been interpretated to mean that if the assets and the operation of the successor corporation are the same as the entity that paid the taxes then the carry back loss is available for tax purposes to the later reporting entity. Thus if the change of corporate entity is only one of name, or form, or place of organization the new entity succeeds to the rights of the prior entity.

■ The reason for such a provision in the tax laws, permitting corporations to spread losses over a period of time, is intended to equalize the tax treatment of *a* corporation whose income may fluctuate from year to year with that of other corporations whose income may be relatively constant. *Aetna Casualty & Surety Company v. United States,* 568 F.2d 811 (2nd Cir.1977). The right to carry back a loss by the acquiring corporation must fall within the provisions of § 381 as defined by § 368. The rule is a hard and fast one, to prevent absorption by one corporation of the losses of another corporation unless the conditions mandated by § 381 are met.

The Statement in *Aetna,* supra, page 820, is significant wherein the court stated:

In 1954 Congress completely revised the Code. With the addition of Section 381 and the significance of Section 368(a)(1)(F) to the operation of the carryback and accounting provisions of Section 381, it became more important to delineate the boundaries between a Section 368(a)(1)(F) reorganization and other types of reorganization than previously had been the case. Citing *Reef Corp. v. Commissioner,* 368 F.2d 125, 136 (5 Cir. 1966), cert. denied, 386 U.S. 1018 [87 S.Ct. 1371, 18 L.Ed.2d 454] (1967).[1]

A review of cases bearing on the questions of applicability of Section 368(a)(1)(F) and 381 of the Internal Revenue Code all indicate identity of activity as required by the Code whereby all reorganizations were of mere changes of form as opposed to changes of substance, *Movielab Inc. v. United States,* 494 F.2d 693, 204 Ct.Cl. 6 (1974), and *"one where the proprietary interest in the transferor and transferee is identical; and two when the business is not interrupted."* (emphasis in opinion). 494 F.2d page 698. Further, as stated in *Movielab,* page 699:

Cases which have denied "F" reorganization status do so on the basis that there has been a substantial shifting of proprietary interests or, secondly, that the same business is no longer being conducted in the new form. Obviously, when there is a substantial shift in ownership, it cannot be argued that the change has been merely of form. See *Helvering v. Southwest Consolidated Corp.,* 315 U.S. 194, 202–203, 62 S.Ct. 546 [551–52], 86 L.Ed. 789 (1942). Further it is clear that "F" status cannot be had unless there is a continuation of the business enterprise. See *Pridemark, Inc. v. Commissioners* 345 F.2d 35, 42 (4th Cir.1965).

see also *Performance Systems Inc. v. United States of America,* 501 F.2d 1338 (6 Cir.1974): *Associated Machine v. Commissioner of Internal Revenue,* 403 F.2d 622 (9 Cir.1968) where stipulations were submitted of the material fact as to the identical ownership and non-interruption of the business. Finally, the principle that the merger of the transfer corporation, tax payer, into a shell corporation as transferee, carryback tax claimant, complies with 28 U.S.C. § 368(a)(1)(F) as "a mere change in identity, form, or place of reorganization" as long as the activity of the corporation is continued. See *Bercy Industries Inc. v. Commissioner of Internal Revenue* 640 F.2d 1058 (9 Cir.1981). The successor corporation may be the parent corporation which then suffers a net operating loss. As occurred in *Bercy Industries,* the parent corporation merged Mach Lumber, which it bought, into Mach Industries, which it *already* owned, and then showed a net loss on its consolidated statement of all its subsidiaries among which was Industries, under the changed name of J.H.I., Inc., the debtor herein. *Bercy,* page 1061, in dealing with such a reorganization stated it may be too complex to determine to which of several component corporations the loss of the surviving corporation is attributable, quoting the Senate Committee:

... the problem of allocating the loss is not involved, and it is suggested that in such cases, at least, there should be no limit in carrybacks. One is the case of a reincorporation of the same corporation in a different state, or upon expiration of its charter. Another instance is that if the wholly owned subsidiary which is liquidated into its parent, which parent suffers a net operating loss in the following year.

*Bercy* continues:

This language strongly suggests that when a reorganization generates no complex problems of post reorganization loss allocation, Congress intended that the surviving corporate taxpayer be able to carry back such losses without limitation.

---

**1.** *Reef Corporation* presents the opposite side of the coin, wherein the court held the new corporation to be only a mere change in identity, form and place of reorganization under Section 368(a)(1)(D), (F) and therefore could not change it accounting methods.

However, here again, in *Bercy* it was *stipulated* that the *same business* generated the income and loss. Page 1062.

I have scrutinized the stipulation submitted by the parties in this case particularly as to the ownership of Mach *Lumber* by Prel on *September 21, 1972* and the transfer by Prel of Mach Lumber assets on that day into its already owned subsidiary, Mach Industries, acquired May 3, 1972. The carry back loss for the year 1974 sustained by Mach Industries was sought from profits of *Mach Lumber* for the period March 1, 1972 to September 21, 1972 when *Prel* bought *Lumber* and transferred the assets to *Industries*. I am mindful of the spin off of Mach Industries, the present debtor known as J.H.I., Inc. as a result of the Prel Inc. Chapter XI proceedings. Nowhere is there a *stipulation* that Mach Industries, from September 21, 1972, was engaged in the same business as Mach Lumber with a resulting loss for the year 1974 that could be carried back, nor was there a stipulation that the stock ownership remained the same for Mach Industries associated with the ownership of Mach Lumber. The change of name from Mach Industries to J.H.I. Inc. in 1976 is not a critical factor to determine the right of J.H.I. (Mach Industries) to carry back the loss of 1974 to the profit of 1972 attributable to the operation of Mach Lumber. It is possible that identity of ownership and activity existed in 1972 through 1974 but there is no stipulation to that effect. Furthermore, who were the owners of Mach Lumber in 1972 when the profits were realized? Did such ownership continue as to the transferee corporation? Without such a stipulation, all of the requirements of 381 of the I.R.S. Code have not been met.

The IRS has raised the question as to who has the burden of proof to establish the validity of the tax assessment made by IRS arising out of the tax carry back payment.

▮ The filing of an assessment for taxes by the IRS carries with it a presumption of correctness and it imposes a burden on the taxpayer of persuasion to disprove the validity of going forward with evidence. *Psaty v. United States*, 442 F.2d 1154 (3 Cir.1971). The taxpayer has the burden of proving by the preponderance of evidence that the deficiency was factually incorrect. *United States of America v. Lease*, 346 F.2d 696 (2d Cir.1965). The assessment by the IRS is presumed correct. The IRS has made an assessment against the debtor's estate and the trustee was obliged to present proof, if not stipulated, by facts showing the identity of the ownership of the successor corporation Mach Industries, when the loss took place in 1974, to be the same as when the profit was made in 1972 by Mach Lumber and that the activity of the two corporations was the same. Furthermore, J.H.I., Inc., the present debtor claimant, was separated from Prel after 1974 as a result of the Reorganization of Prel under the provisions of Chapter XI of the Bankruptcy Act. *The trustee* of the present debtor estate, *as a claimant* of the tax refund for the year 1974, may have a different entity identification to deal with than the corporate entity that existed in 1972–1974, with different tax consequences. The trustee has failed to carry his burden of persuasion and of going forward with his proof to overcome the presumption of correctness of the tax assessment for the year 1974 against the successor Mach Industries.

The trustee herein, as stated above, understandably because of the difficulty to gather together the proof of activity of the Debtor from its records, has failed to establish by the necessary proof that the carry back loss to corporations as permitted in 26 U.S.C. § 381 as defined in 26 U.S.C. § 368 should be allowed. The claim of the Internal Revenue Service is presumed correct and will be allowed.

For the foregoing findings of fact and conclusions of law an Order shall be entered denying the Trustee's motion and the claim of the Internal Revenue Service is allowed.